**Robert Eugene BAKER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1283S471.**

Supreme Court of Indiana.

Oct. 11, 1985.

F. Laurence Anderson, Jr., Gary, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from two convictions of murder, I.C. § 35–42–1–1. The case was tried before a jury. Appellant received consecutive fifty year sentences.

Appellant raises three issues on appeal: (1) whether trial court erred in not allowing appellant to present rebuttal evidence after it permitted co-defendant Spurlock to reopen his case; (2) whether trial court erred in warning co-defendant's witness, Eddie Lackland, that certain questions were potentially incriminating; (3) whether there was sufficient evidence to support his murder convictions.

These are the facts from the record that tend to support the determination of guilt. On June 22, 1982, Eddie Lackland hosted a party in his garage. Appellant attended the party. During the course of the party, appellant cut up to the front of the punch line, and he demanded some punch. Lackland asked him to move to the back of the line. Appellant responded, "I'm grown man, no one tells me what to do." Thereafter, the confrontation intensified, and as a result, Lackland backhanded appellant across the face with a black jack. Jerry Wallace picked appellant up off the floor, and they left the party. About fifteen to thirty minutes later, appellant, Andrew Spurlock, Dana McCulley, and a fourth person returned to the party. Victim, Dwayne Stribling, was outside the garage. Darryl Smith, who was inside the garage, heard a gunshot outside the garage. Smith headed toward the garage door, and he observed appellant holding a .38 caliber or a 357 magnum revolver. Moments later, appellant raised the garage door, and he and his accomplices began firing at the persons inside the garage. Lackland and Smith fired back at them. Spurlock had a rifle, McCulley had an automatic pistol, and the unidentified accomplice carried an unidentified gun. Lackland had a 357 magnum, and Smith had a .44 caliber automatic. Several persons were injured. Stribling died of gunshot wounds. The next morning, victim, Robin Williams, was found dead in the yard behind the garage. He also died of gunshot wounds. Williams was at the party. A pathologist discovered .38 caliber bullets in Stribling's body and .32 caliber bullets in William's body. A ballistic expert testified that the .38 caliber bullets came from the same weapon which was either a .38 caliber revolver or a 357 magnum revolver. The ballistic expert also testified that the .32 caliber bullets came from the same weapon and that the .32 caliber bullets could have been fired from the .30 caliber cartridge casings found at the scene of the shootout. He further testified that the .30 caliber cartridge casings were indicative of an automatic or semi-automatic weapon.

I

Appellant argues that the trial court erred in denying him the opportunity to rebut the testimony of Eddie Lackland Jr. During the course of the State's closing argument and after all parties had rested, co-defendant Spurlock requested authority to re-open his case in order to present the testimony of Lackland. The trial court granted a recess in order to permit Spurlock and the other parties to ask Lackland preliminary questions. Thereafter, the trial court permitted Spurlock to re-open his case; consequently, the jury returned to the court room and Lackland testified. The substance of Lackland's testimony described appellant's participation in the shooting. Lackland also testified about the fight with appellant which occurred before appellant was taken by his friends from the party and before the shooting. He claimed that at the time of the fight appellant was wearing blue jeans and red leather. At the conclusion of Lackland's testimony, appellant asked permission to recall his wife to the stand in order to rebut Lackland's testimony about appellant's clothes. The trial court denied the request.

The scope of rebuttal is a matter left to the discretion of the trial court. See *Wells v. State* (1982), Ind., 441 N.E.2d 458. Rebuttal evidence is that which tends to explain or contradict or disprove evidence offered by an adverse party. *Layton v. State* (1973), 261 Ind. 251, 301 N.E.2d. 633.

Appellant's wife's testimony would have contradicted Lackland as to the clothes appellant was wearing at the time of the fight, thereby casting doubt upon whether appellant was actually the person whom Lackland struck. However, the evidence that appellant was present at the party and that Lackland struck appellant is overwhelming. Three eyewitnesses testified to that fact and appellant's wife corroborated their testimony when she testified that appellant's mouth was bleeding when he arrived home that evening.

Furthermore, appellant's proposed rebuttal evidence is narrowly focused to impeach Lackland's identification testimony at the time of the fight.

However, the time of the fight is not the critical time period. The critical time period was the one during which the shooting occurred and this was the time period to which appellant's alibi defense pertained. Consequently, the trial court's restriction of his proposed rebuttal evidence did not impinge upon his core defense of alibi. Therefore, although appellant's proposed rebuttal evidence was indeed rebuttal evidence because it contradicted evidence offered by another party, the trial court did not err in excluding it because it was peripheral to the issue of whether appellant was one of the perpetrators of the shooting and killing of Stribling and Williams.

## II

Appellant argues that the trial court erred in warning co-defendant's witness Lackland in front of the jury that certain questions were potentially incriminating. Before Lackland testified, the trial court advised him of his fifth amendment right not to incriminate himself. The pertinent part of the record is set forth here:

By. Mr. Anderson (appellant's attorney)

Q. Did you have, in your possession at any time that night, a 357 revolver?

A. No. sir.

Q. Did you fire a 357 revolver at any time during the night?

A. No, sir.

Q. Did you remove any weapons from that garage?

A. No ...

Q. Do you smoke pot?

A. Sometimes.

Q. Were you smoking pot on the night of June 21st?

A. No.

BY THE COURT:

That was one of—that's one of the questions

BY THE WITNESS:

I plead the fifth

After appellant cross-examined Lackland, the prosecutor cross-examined him. When the prosecutor attempted to question Lackland about his possession of firearms at the party, the trial court warned Lackland of the incriminating nature of the question, and as a result, Lackland exercised his fifth amendment right, and he refused to answer the question.

■ Appellant claims that such an inconsistent application of the trial court's power to assist a witness in the protection of his constitutional rights is reversible error. We disagree. Appellant has not demonstrated how the trial court's inconsistency prejudiced him. Appellant was able to question Lackland about his alleged possession of firearms and his use of pot. Lackland answered appellant's questions in front of the jury before the trial court could warn Lackland of their incriminating nature. The answers Lackland gave contradicted Smith's testimony and probably benefitted appellant. Furthermore, the answers were not stricken from the record. Any limitation on appellant's right to cross-examination was minimal and of no real consequence. Moreover, we do not see how restriction of the State's cross-examination prejudiced appellant, especially in light of the fact that the answers the State attempted to elicit from Lackland were already before the jury.

## III

Appellant argues that there was insufficient evidence to support his convictions for murder.

This Court will not weigh the evidence nor judge the credibility of the witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Reed v. State* (1979), 185 [180] Ind.App 5., 387

N.E.2d. 82; see also *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d. 1088.

 Here is the evidence most favorable to the State that supports the conviction for the murder of Stribling. Stribling went outside the garage to urinate. Smith, who was inside the garage, heard a gunshot outside the garage. Smith headed toward the garage door, and he observed appellant holding a .38 caliber revolver or a 357 magnum revolver. Smith observed appellant near the area where Stribling fell wounded. Then, appellant raised the garage door, advanced one foot inside and began firing into the garage. A pathologist discovered .38 caliber bullets in Stribling's body. A ballistic expert testified that the .38 caliber bullets came from the same weapon which was either a .38 caliber revolver or a 357 magnum revolver. This evidence is sufficient to support appellant's conviction for the murder of Stribling.

Here is the evidence most favorable to the State that supports the conviction for the murder of Williams. Witness Lackland testified that William's was present at the party. Lackland testified further that, in a prior statement to police, he had stated that Williams was in the garage at the time of the shooting. Appellant and his accomplices fired into the garage at a crowd of people. The crowd scattered. Williams was found dead in the yard behind the garage in a position that gives rise to the inference that he was fleeing from the gunfire of appellant and his accomplices. A pathologist discovered two .32 caliber bullets in William's body. A ballistic expert testified that the .32 caliber bullets came from the same weapon and that the .32 caliber bullets could have been fired from the .30 caliber cartridge casings found at the scene of the shootout. The ballistic expert further testified that the cartridge casings were indicative of an automatic or semi-automatic weapon. Smith testified that accomplice McCulley was firing an automatic weapon. The evidence also reveals that Lackland or Smith did not shoot Williams—because they fired .38 and .44 caliber weapons. Also, Smith fired a .30 caliber at figures in the alley after the shootout, however, this was a substantial distance from the backyard and in another direction. It is clear that from the evidence set out above the jury could infer that one of appellant's accomplices shot and killed Williams beyond a reasonable doubt. Consequently, under the principles of accomplice liability, there is sufficient evidence to support his conviction for the murder of Williams. I.C. § 35–41–2–4; see *Harris v. State* (1981), Ind., 425 N.E.2d. 154; *Harden v. State* (1982), Ind., 441 N.E.2d. 215.

The convictions are affirmed.

GIVAN, C.J., and PRENTICE, PIVARNIK and SHEPARD, JJ., concur.