Robert E. BAKER, Sr., Petitioner,

v.

Charles MILLER, Respondent.

No. 2:99CV0008AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 27, 1999.

Robert E. Baker, Pendleton, IN, pro se.

JT Whitehead, Indiana Atty. General, Indianapolis, IN, for Respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

On January 11, 1999, *pro se* petitioner Robert E. Baker, an inmate at the Pendleton Correctional Facility, filed a petition pursuant to 28 U.S.C. § 2254. The response filed by the Attorney General of Indiana on July 2, 1999, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). On August 13, 1999, the petitioner filed a Motion to Appoint Counsel, a Motion to Expand the Record, and a Traverse, all of which have been carefully examined by the court.

■ The court will deny the motion to expand the record as unnecessary because the documents attached to the petitioner's motion are already before the court as part of the State court record. The court will take the documents cited by the petitioner into consideration in its review of this petition. In regard to appointment of counsel, courts do not intervene on a litigant's behalf "as of course; they recruit lawyers for the parties only when the cases are colorable, the facts may be difficult to assemble, and the law is complex."

*DiAngelo v. Illinois Dep't of Public Aid,* 891 F.2d 1260, 1262 (7th Cir.1989). The district court's power to appoint counsel is reserved only to those cases "presenting 'exceptional circumstances' as determined by 'an evaluation of both' 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Farmer v. Haas,* 990 F.2d 319, 323 (7th Cir.1993). 990 F.2d at 322 (quoting *Terrell v. Brewer,* 935 F.2d 1015, 1017 (9th Cir.1991)). The petitioner's case does not appear to be particularly complex and he has articulated his claims quite plainly and has diligently proceeded with the case. The petitioner's Traverse is a particularly well drafted document of twenty-two pages presenting his arguments strongly and citing cogent case authority.

Mr. Baker was convicted in the Lake Superior Court, Criminal Division of two counts of murder and on July 29, 1983, the court sentenced him to consecutive 50–year terms of imprisonment on each count. The facts found by the two highest courts in the State of Indiana are subject to a presumption of correctness here under 28 U.S.C. § 2254(e)(1). The Indiana Supreme Court affirmed Mr. Baker's conviction in a unanimous opinion authored by Justice DeBruler. *Baker v. State,* 483 N.E.2d 736 (Ind.1985). The denial of the petitioner's first petition for post-conviction relief was affirmed by the Indiana Court of Appeals in *Baker v. State,* 580 N.E.2d 338 (1991), authored by Judge Hoffman and concurred in by Judges Staton and Rucker. The denial of the petitioner's most recent petition for post-conviction relief was affirmed in an unpublished memorandum decision of the Court of Appeals of Indiana dated May 28, 1998, authored by Judge Staton and concurred in by Judges Hoffman and Rucker, and is incorporated herein by reference. It appears that the Supreme Court of Indiana denied transfer on November 18, 1998.

According to the Indiana Supreme Court's statement of the facts, *Baker v. State,* 483 N.E.2d at 737, on June 22, 1982, Eddie Lackland held a party in his garage in Gary, Indiana. During the course of this party, Lackland backhanded the petitioner with a black jack at the culmination of an argument over the petitioner's having cut in front of the line to the punchbowl. The petitioner left the party. Later that morning, Darryl Smith heard a shot outside the garage. When Smith looked out, he saw Dwayne Stribbling, who had recently left the party, lying on the ground with the petitioner standing near him with a revolver in his hand. Shortly thereafter, the petitioner raised the garage door and he and three others began firing into the garage. Lackland and Smith returned fire. In addition to the deaths for which the petitioner was prosecuted, several others were injured during the shootout.

Dwayne Stribbling died of gunshot wounds incurred during the incident, and the next morning, Robin Williams was found dead in the yard behind the garage. A ballistics expert testified that the bullets that killed Stribbling and Williams came from the same weapon. The position of Williams' body and ballistics evidence establish that Lackland and Smith did not shoot Williams.

Mr. Baker's habeas petition raises three grounds: sufficiency of evidence as to the murder of Williams; ineffectiveness of counsel because trial counsel did not object to the admission of Lackland's out of court statement as substantive evidence or request a limiting admission of Lackland's out of court statement as substantive evidence or request a limiting instruction; and a claim that the appellate panel was tainted because Judge Robert Rucker was a member of the panel.

The petitioner argues that the fact that Williams' body was not discovered until after dawn the morning after the shootout indicates that he might have been killed at some other time, rather than during the events in which the petitioner participated. In addressing a claim for sufficiency of the evidence, courts review the

evidence in a light most favorable to the government and will sustain the conviction so long as any reasonable trier of facts could have concluded that the essential elements of the crime were established. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As the Indiana Court of Appeals noted in its adjudication of the appeal of his most recent petition for post-conviction relief, the position of Williams' body, the ballistics evidence, the testimony of the ballistics expert, and testimony that Williams was present at the party all support the proposition that Williams was killed during the course of this incident by bullets fired by the petitioner.

■ In order to prevail upon an ineffective assistance of counsel claim, the petitioner must establish that his trial counsel's performance fell below an objective standard of reasonably effective representation and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Indiana Court of Appeals reviewed the petitioner's claim under this standard, and concluded that he showed neither deficient

■ While the petitioner's sufficiency of evidence and ineffective assistance of counsel claims do not demand an extended hearing, the assertion that one of the three judges of the Indiana Court of Appeals panel that reviewed the denial of his most recent post-conviction relief petition was involved at one time in these proceedings on the prosecution's side is of great concern.

The materials submitted in this case indicate that a criminal investigation was conducted with regard to the shooting in Gary, Indiana in June 1982. Almost sixteen years later, Judge Rucker was a member of the Court of Appeals panel that rendered a decision relevant to the state criminal proceedings against this petitioner and concurred in the opinion of the Court of Appeals authored by Judge Staton.[1]

Mr. Baker asserts that Robert Rucker was a deputy prosecutor in the Office of the Prosecuting Attorney of Lake County, Indiana in June 1982, when the investigation and murder charges were lodged against him. The petitioner further asserts that Judge Rucker signed documents initiating the prosecution against him and appeared at the petitioner's probable cause hearing on behalf of the prosecutor's office.

The petitioner first presented this issue to the Indiana Court of Appeals on January 21, 1998, in a petition for recusal of Judge Rucker in the event he was one of the judges eventually assigned to the appeal. Chief Judge John Sharpnack denied this motion as premature because at that time a panel of judges had not yet been assigned to the case. When the petitioner's appellate counsel became aware that a panel had been appointed (but not who was on the panel), she renewed her motion for recusal of Judge Rucker. Chief Judge Sharpnack denied the petitioner's motion without comment. The record does not reflect whether Judge Rucker ever saw the petitioner's motions for recusal or was aware of them. The petitioner's appellate brief does not mention Judge Rucker's involvement in the early stages of the prosecution against the petitioner, and the decision entered on May 28, 1998, does not refer to the petitioner's recusal motions.

The petitioner filed a petition for rehearing, raising the issue of Judge Rucker's participation in reviewing his appeal. The petitioner noted that he had moved for Judge Rucker's recusal and cited Indiana Judicial Canon E(1) and several state cases dealing with judicial recusal.

---

1. Judge Rucker also participated in the Indiana Court of Appeal's review of the denial of the petitioner's first petition for post-conviction relief, so Judge Rucker acted twice in a judicial capacity in regard to this case. The petitioner, however, made no objection to Judge Rucker's participation in the 1991 proceedings, and Judge Rucker's earlier participation is not before this court.

Indiana Judicial Conduct Canon E(1) states in pertinent part that:[2]

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning the party. Or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy . . .

Chief Judge Sharpnack denied the petition for rehearing without comment. Again, the record does not reflect whether or not Judge Rucker was aware of the petitioner's attempt to obtain reconsideration of his non-recusal.

The petitioner then filed a petition to transfer in the Indiana Supreme Court, in which he raised the question of a "tainted" appellate panel. The petitioner addressed this claim in his brief in support of his petition, citing Indiana Judicial Canon E(1), and State court decisions on judicial recusal. The petitioner also asserted that "Judge Rucker's failure to recuse himself violated Baker's due process rights in that it rendered the proceeding unfair," citing *Tyson v. State*, 622 N.E.2d 457, 460 (Ind. 1993).

In his habeas corpus petition, the petitioner argues that Judge Rucker's non-recusal violated his Fourteenth Amendment due process rights. The respondent asserts that this claim is procedurally defaulted because the petitioner did not fairly present his federal claim to the state courts in that he failed to sufficiently articulate that claim in his petition to transfer. The respondent concedes that the petition-er cites the due process clause in his brief in support of his petition to transfer, but argues that he cited the court to only four authorities—the Indiana Judicial Canon and three state cases—none of which adequately supported his due process claim.

One of the cases cited by the petitioner in his petition to transfer, *Tyson v. State*, discusses the application of the Fourteenth Amendment's due process clause to the recusal of a justice of the Indiana supreme court. In that case, the court held that "failure to recuse under some circumstances would deny a party of due process of law." *Tyson v. State* 622 N.E.2d at 460. The respondent argues that the "petitioner does not explain whether such circumstances existed when his third petition for post-conviction relief was reviewed by the Indiana Court of Appeals," but the court reads the petitioner's brief in support of the petition for transfer as outlining the grounds on which he based his Fourteenth Amendment claim sufficiently to avoid the doctrine of procedural default.

■ Turning to the merits of the petitioner's due process claim, this court is deeply concerned because of the delicacies that are involved in the recusal question, but understands that it does not sit as a court of common law review for the Court of Appeals of Indiana; rather it sits under a federal statute that provides for collateral review for constitutional issues and federal statutory and treaty issues. *See Bell v. Duckworth*, 861 F.2d 169 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). The question of whether Judge Rucker's non-recusal violated Indiana Judicial Canon E(1) or Indiana law has been determined against the petitioner by the Indiana courts, and

**2.** Recusal or judicial disqualification in the federal judicial system is predicated on similar considerations. *See* Titles 28 U.S.C. § 144 and 28 U.S.C. § 455. Section 144 requires a judge who has "a personal bias" for or against a party to recuse himself; § 455(a) requires a judge to disqualify himself "In any proceeding in which his impartiality might reasonably be questioned," and § 455(b) lists a series of circumstances in which a judge should disqualify himself. Section § 455(b)(3) requires recusal if a judge "served in governmental employment and in such capacity participated in counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."

unless he can establish that Judge Rucker's non-recusal violated the Fourteenth Amendment's due process clause, this court can grant him no relief. Judicial canons, and even 28 U.S.C. § 455, the federal statute on judicial disqualification, establish a standard more demanding than required by the due process clause—and accordingly, conduct violative of the statute or canons may not be a due process deficiency. *See United States v. Couch,* 896 F.2d 78, 81 (5th Cir.1990).

The state court record establishes that on June 25, 1982, Deputy Prosecutor Robert Rucker signed and filed the affidavit for probable cause prepared by Gary Police Officer Joseph L. Griffin.[3] This affidavit concludes with a statement that Dwayne Stribbling had been killed and three others injured by gun shots "caused by unknown persons at 624 Polk Street, Gary Indiana."[4] (State Court Record at page 12). Apparently on the same day, Deputy Prosecutor Rucker approved an information charging several persons, including Robert Eugene Baker, with the death of Robin Williams and Dwayne Stribbling and with shooting at several other persons (State Court Record at page 22), and signed a petition opposing granting bond to the defendants (State Court Record at page 24). The record reflects that a probable cause hearing was held and arrest warrants issued (State Court Record at page 13), but there is no indication who participated in the probable cause hearing. Another deputy prosecutor appeared at Mr. Baker's arraignment on July 7, 1982, (State Court Record at page 25), and there is no indication from the record that Deputy Prosecutor Rucker had any further involvement in this prosecution.

This court wishes to emphasize that while it accepts for the purposes of this memorandum that Judge Rucker partici-

pated in the opening phases of the petitioner's prosecution, it is not accusing Judge Rucker of *any* species of judicial misconduct. While in some respects the charges against this petitioner are memorable, they would probably not be as memorable to a deputy prosecutor in Lake County (given the volume of homicide cases handled by that office), as it might be in other Indiana jurisdictions. Moreover, because Judge Rucker was only involved in the very preliminary stages of the prosecution against Mr. Baker and the other defendants, he may well have no actual memory of any involvement in that particular prosecution or any memory connecting this particular petitioner with the events that gave rise to the charges of which he was eventually convicted.

If the petitioner's efforts, sixteen years later, to have him recused from the appellate panel reviewing the denial of the petitioner's most recent petition for post-conviction relief had come to Judge Rucker's attention, it may well have triggered a memory of this early involvement. But the record before the court does not establish that Judge Rucker was ever aware of the petitioner's efforts to have him recused from the appellate panel. Chief Judge Sharpnack alone signed each of the orders denying the petitioner's recusal motions and his motion to reconsider the appellate court's decision denying him substantive relief on the ground of Judge Rucker's participation in that decision.

Fundamentally, what is involved here are appearances, and in this context, appearances can be terribly important—though not necessarily rising to the level of a due process violation. One object lesson in this is an excellent analysis by then Chief Judge Moran of the Northern District of Illinois in *United States ex rel.*

---

3. It does not appear to be disputed that Judge Rucker was a deputy prosecutor in Lake County, Indiana in 1982, and the respondent does not contend that Judge Rucker did not participate in the opening phases of the efforts to prosecute the petitioner.

4. The affidavit for probable cause was three pages in length. The final page, signed by Deputy Prosecutor Rucker, does not identify the assailants. Earlier in the affidavit, however, Officer Griffin states that Eddie Lackland had identified Robert Baker as one of the persons who fired into his garage.

*Castiglione v. Washington,* 1994 WL 589529 (N.D.Ill.1994). At page three of that document, Judge Moran cites *Del Vecchio v. Illinois Dept. of Corrections,* 31 F.3d 1363, 1370 (7th Cir.1994) for the proposition that:

It settled, however, that not every situation, arguably appropriate for judicial disqualification, would be a due process violation were that judge to hear the case.

\*　　\*　　\*　　\*　　\*　　\*

Under *Del Vecchio* a litigant makes out a due process violation (and therefore entitled to habeas relief) only when he can show either actual bias or "an influence or interest we can conclusively presume would cause the average judge to be biased."

\*　　\*　　\*　　\*　　\*　　\*

"Instead, the court limited the analysis to two inquiries. Under *Del Vecchio* a litigant makes out a due process violation (and therefore entitled to habeas relief) only when he can show either actual bias or 'an influence or interest we can conclusively presume would cause the average judge to be biased.' *Id.* at 1378. In the latter category the court focused on three situations already addressed by the Supreme Court. The first is when the judge has a 'direct, personal, and substantial' pecuniary interest in the case. *Id.* at 1374 (quoting *Aetna Life Ins. Co.,* 475 U.S. at 825–826, 106 S.Ct. 1580). The second is when a litigant's personal attacks on the judge were sufficiently serious so as to 'personally embroil [ ] the judge with the litigant," *Del Vecchio,* 31 F.3d 1363, 1373 (comparing *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) with *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1968)). The third is when the prosecutorial and adjudicatory functions are combined into one body. *Del Vecchio,* 31 F.3d 1363, 1378 (citing Murchison 349 U.S. at 134–137, 75 S.Ct. 623).

*Castiglione v. Washington,* 1994 WL 589529 at p. 3.

The issue gurgled up from a Seventh Circuit area case again in 1997, as indicated in *Bracy v. Gramley,* 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997), in which Chief Justice Rehnquist spoke for a unanimous court. That case involved a question of a judge exposed as the recipient of bribes in the so-called "Operation Greylord." The judge was not accused of or convicted of taking a bribe in the case involving the particular petitioner for federal habeas corpus. Chief Justice Rehnquist laid out the essentials as follows:

Before addressing whether petitioner is entitled to discovery under this Rule to support his judicial-bias claim, we must first identify the "essential elements" of that claim. *See United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 1488, 134 L.Ed.2d 687 (1996). Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 828, 106 S.Ct. 1580, 1588–89, 89 L.Ed.2d 823 (1986). Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. *See, e.g., Aetna, supra,* at 820–821, 106 S.Ct., at 1584–1585; *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927); 28 U.S. §§ 144, 455; ABA Code of Judicial Conduct, Canon 3C(1)(a)(1980). But the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal," *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), before a judge with no actual bias against the defendant or interest in the outcome of his particular case. *See, e.g., Aetna, supra,* at 821–822, 106 S.Ct. at 1585–1586; *Tumey, supra,* at 523, 47 S.Ct., at 441.

*Bracy v. Gramley,* 520 U.S. at 904–905.

The bottom line, however, of this unanimous Supreme Court opinion was to reverse the decision of the Court of Appeals affirming the denial of habeas and remand the case for further consideration.

It is all too apparent that these issues are greatly troubling to the federal judiciary at all levels as they are to the highest courts of the State of Indiana. But few if any of these cases are decided totally on questions of due process. Close attention should be given in this regard to *State ex rel. Wright v. Morgan County Court*, 451 N.E.2d 316 (Ind.1983). No doubt, in both the federal and state cases, there is a strong presumption against actual bias. However, the rule against a judge who was a lawyer, including a member of a law firm or indeed a deputy prosecutor, on one side of a case, is perhaps subject to disqualification, it is doubtful under *State ex rel. Wright* whether there has to be an established actual bias under the circumstances of that case. There are, however, also cases under parallel provisions of the federal code, namely 28 U.S.C. § 455 that invoke due process in judicial disqualification. *See United States v. Couch*, 896 F.2d at 81.

This court must repeat that it does not conceive any species of judicial misconduct on the part of Judge Rucker, but given the composite effect of *State ex rel. Wright* in Indiana and the Supreme Court of the United States in *Bracy v. Gramley*, close attention must be given to the question of his non-recusal. An additional case involving the imposition of the death penalty in Illinois was considered *en banc* by the Court of Appeals was *Del Vecchio v. Illinois Dept. Of Corrections*, 31 F.3d 1363, 1371–1380 (7th Cir.1994), *cert. denied*, 514 U.S. 1123, 115 S.Ct. 1992, 131 L.Ed.2d 878 (1995), in which the extensive majority opinion by Judge Manion was bottomed on actual bias. Judges Easterbrook, Cummings, Cudahy, Ripple and Rovner, however, appear to have deepened concerns that are bottomed in due process considerations.

When the circumstances in this case are examined in light of *Bracy v. Gramley*, this court has great hesitancy to rule here and now as a matter of law that a due process issue has arisen with reference to the participation of Judge Rucker in the appellate process of this case. There is an obvious appearance of impropriety, but the record does not indicate an actual bias against Mr. Baker on the part of Judge Rucker. As previously noted, the record does not establish that Judge Rucker was aware of the efforts to obtain his recusal or that he had any conscious memory of his participation in the earliest stages of the prosecution against Mr. Baker.

■ "The floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. at 904–905, 117 S.Ct. 1793 (citations omitted). The record before the court does not support a finding that Judge Rucker had any actual bias against the petitioner, and he was one of three appellate court judges who reviewed the denial of Mr. Baker's most recent petition for post-conviction relief. That panel unanimously rejected the petitioner's substantive claims as did the Indiana Supreme Court in its denial of transfer. This court has also reviewed Mr. Baker's substantive claims and finds them to be without merit. It is doubtful whether a panel including Judges Staton and Hoffman along with another judge, other than Judge Rucker, would have reached a different conclusion.

There are very serious crimes involved here that engendered very heavy penalties, and this court is not inclined to gainsay the consideration of this case by the Supreme Court of Indiana. Neither is this court in any way concerned otherwise with regard to the opinions of Judges Hoffman and Staton. But the concerns remain and in denying the habeas writ here, this court will, if asked, permit the issue to go for-

ward to the Court of Appeals so that the issue can be thoroughly considered there.

For the forgoing reasons, the court **DENIES** the petitioner's motion for appointment of counsel [docket # 20] and his motion for expansion of the record [docket # 21], and **DENIES** the petition for writ of habeas corpus with the understanding that, if requested, it will grant a certificate of appealability limited to the due process issue relating to the participation of Judge Robert Rucker in the appellate processes involving this petitioner in the Court of Appeals of Indiana.

**IT IS SO ORDERED.**