NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0801n.06

No. 08-2146

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Jul 24, 2012***

LEONARD GREEN, Clerk

JERRY DOWELL BAILEY, JR.,                    )
                                             )          ON APPEAL FROM THE
      Petitioner-Appellant,             )          UNITED STATES DISTRICT
                                             )          COURT FOR THE EASTERN
v.                                           )          DISTRICT OF MICHIGAN
                                             )
WILLIE O. SMITH, Warden,                     )                  O P I N I O N
                                             )
      Respondent-Appellee.              )

BEFORE:    COOK, McKEAGUE, and ROTH[*], Circuit Judges.

**McKeague, Circuit Judge.**  Petitioner Jerry Bailey appeals the district court's denial of his

application for habeas relief.  Petitioner argues (1) ineffective assistance of counsel, (2)

unconstitutional evidentiary rulings; and (3) judicial bias.  Because Petitioner failed to show that the

last reasoned state court decision was either contrary to or an unreasonable application of clearly

established Supreme Court precedent, we **AFFIRM** the district court.

## I.  BACKGROUND

### A.  Factual Background

On February 26, 2004, police arrested Petitioner near the scene of an armed robbery in

Detroit, Michigan.  Petitioner was charged with seven counts stemming from that crime: four counts

---

[*]The Honorable Jane R. Roth, United States Court of Appeals for the Third Circuit, sitting
by designation.

of armed robbery, one count of first-degree home invasion, one count of possession of a firearm

during the commission of a felony, and one count of felon-in-possession of a firearm. R. 19-3,

6/18/04 Tr., 3. The evidence adduced at Petitioner's trial was accurately summarized in the

Magistrate's Report and Recommendation ("R&R") adopted by the district court. The salient points

of the R&R include:

> Robert McGhee stated that in February, 2004, he resided at 11635 Archdale
> in the City of Detroit. At about 1:00 p.m., he was in front of his garage, where he
> works on cars. With him were Marcus Nixon and a woman he knew as Neicy.
> [T]hree armed men came around the corner. One placed a gun to Nixon's head. The
> others took McGhee into the garage and made him lay on the floor while they rifled
> his pockets and removed cash from his wallet. Nixon and McGhee had their hands
> tied with belts. Nixon was blindfolded. Both were placed in a car in the garage. A
> man identified as [Petitioner] placed a gun to his head and demanded his house keys.
> The man went to the house after instructing the others to kill McGhee and Nixon if
> he was unable to enter the house. Just then, McGhee's wife then came out to feed
> the dog. All three men rushed her. McGhee untied himself and ran from the car to
> an oil change shop down the street. He hid there while shop employees summoned
> the police. When the police arrived he was reunited with his wife and Nixon, who
> was locked in the garage. Two weeks prior to trial, McGhee identified Appellant at
> a police lineup. He was unable to describe the pistol or the other two weapons.
> [Patricia McGhee offered substantively similar testimony.]
> Marcus Nixon stated that on February 26, 2004, he was at the McGhee house.
> A young woman arrived. Minutes later, a man with a black gun hit him on the head
> and ordered him onto the floor of the garage. His hands were tied behind his back
> and he was blindfolded with a rag. $50.00 cash and his wallet, which contained
> another $200.00, were taken from him. Two persons helped him into a car. He then
> heard someone demand house keys from McGhee. That person threatened to kill
> McGhee if McGhee gave him the wrong key. Nixon later escaped the car and called
> 911 from a telephone in the garage. He tried to leave, but a man exited the house
> with a gun and locked him in the garage. Minutes later, McGhee and the police
> arrived and he was released from the garage. He later attended a lineup [six months
> after the crime] which included [Petitioner]. Nixon selected another person.
> Detroit Police Officer Samuel Dunigan [was] the officer in charge of the case.
> He stated that at about 6:35 p.m. he interviewed [Petitioner] in the presence of
> Officer Williams. After he advised [Petitioner] of his constitutional rights,
> [Petitioner] replied "I refuse to make a statement." He stated that he then "discussed"

the crime and that [Petitioner] admitted to having a gun, placing a gun to Mrs. McGhee's head, entering the house and having two accomplices. Dunigan further testified that he asked to reduce the discussion to writing, but that [Petitioner] refused. Dunigan later became aware of a wallet placed in evidence by Officer Hamilton. He stated that it was destroyed on March 18, 2004. Dunigan oversaw the police lineup attended by Mr. McGhee, Mrs. McGhee, and Mr. Nixon. Both McGhees positively identified [Petitioner]. Nixon did not. Dunigan was aware that the fourth complainant, Kathleen Horton, was involved. He stated that he had made three or four unsuccessful attempts to contact her. The Investigator's Report indicated that $305.00 was taken from [Petitioner] following his arrest . . . .

[Petitioner's] motion for directed verdict was granted as to complainant Kathleen Horton only. His motion to dismiss based upon the destruction of the wallet was denied.

[Petitioner] then testified that following a 15 year prison term for criminal sexual conduct . . . . he moved in with his cousin, where he meet Leslie Horton, a/k/a Kathleen Horton, a/k/a Neicy, who is his girlfriend Cynthia's best friend. He was working at a temporary staffing company and needed a car to get to the various job sites . . . . On February 7, 2004, he went with Horton to purchase a car. Two weeks later, the car had mechanical problems. Horton told him that she had a friend named McGhee who works on cars. On February 26, 2004, he awoke and saw that his car was gone. He paged Horton, who told him that she was going to get his car fixed. He asked her to pick him up so that he could go to work to get his paycheck. He, Cynthia, his cousin Kevin Wiley, . . . Horton and her cousin Deek drove to the [] oil change shop on Southfield and Plymouth. Horton identified McGhee's nearby house and [announced] that she was going there. [Petitioner] went to the store to purchase lottery tickets. When he returned, he saw Deek pushing a truck in the service drive, [and] Horton and his cousin Kevin driving away in his car. [Petitioner] and Cynthia walked toward McGhee's house, where he saw his other cousin Kevin running from [the property] with a gun in his hand and a mask over his face. He thought that his cousin had been involved in a drug transaction which had gone awry. He took the gun from Kevin, who ran away. When plain clothes officers in an unmarked car arrived, he thought they were the drug dealers and that they were after him so he ran. When uniformed officers in marked cars joined the chase, he became scared and ran. He surrendered after discarding the gun.

R. 21, Report and Recommendation, 5-8 (quoting Def.-Appellant's Br. in *People v. Bailey*, No.

258705 (Mich. Ct. App.), at 1-5.) (internal alterations omitted). Petitioner was the sole witness for

the defense.

The prosecutor began his closing argument by telling the jury: "what I want to lay out for you is why this case . . . has been proven to you beyond a reasonable doubt, as to every charge, and why you should return a verdict of guilty." R. 19-8 at 87. The prosecutor continued: "In other words, the defendant doesn't get to get up here and put in some cockamamie story, and you say, 'Well, he said it, it must be true. And it's the defendant, we can't really question it' . . . . You have to judge the credibility of the witnesses." *Id.* The prosecutor noted that the defendant offered a "totally contrasting version" of events and repeatedly urged the jury to consider, "Which one is true? Which does your common sense tell[] you is true? Which one has other corroboration that tells you if it's true? Which one sounds like a fantasy plot from NYPD Blue?" *Id.* at 90. The prosecutor continued in this vein for the remainder of his closing argument as he guided the jury through each witness and piece of evidence. Ultimately, the prosecutor urged the jury to use their common sense, "judge the credibility" of the evidence, and reach a guilty verdict. *Id.* at 91-118.

After the judge sent the jury to deliberate, the jury sent the court a note with three questions. First, the jury wanted to know: "Why six months before a line-up?" R. 19-9 at 73. Second, the jury asked: "Were guys in the line-up asked to speak so complainants could hear their voices?" *Id.* Finally, the jury asked: "Where [sic] any fingerprints taken by the technicians?" *Id.* In response – outside the presence of the jury – the judge remarked: "I mean, it really burns me that we hear this kind of evidence, and people send out stupid questions after I told them, you are not detectives. I'm going to tell them that again." *Id.* at 74. The judge then brought the jury back into the courtroom and responded to their questions as follows:

> Now, I have to explain to you very carefully, and pick my words very carefully, because I don't want to offend anyone. But do you remember when I told you when you went in there that you are not to be detectives, or defense attorneys, or prosecutors? You take the evidence that you heard in the courtroom. I can't tell you what the evidence is. You heard the evidence. The only questions in this case [are], were those two people robbed, three people robbed? Was that house broken into, and did this man do it. That's all we're asking you to do. Forget about all of this, you heard the case. I don't decide the facts. You heard the facts. You decide the facts. If I were to sit here and tell you what the facts were, the Court would be deciding the evidence. And I can't do that. You do that. Okay? Thank you.

*Id.* at 74-75. Sixteen minutes later, the jury returned its verdict. Bailey was convicted of three counts of armed robbery, one count of first-degree home invasion, one count of possession of a firearm during the commission of a felony, and one count of felon-in-possession of a firearm. The judge thanked the jury, and then remarked:

> Now, you and I all heard this case at the same time. So, I heard the same evidence that you heard. There was enough evidence to convict 10 people. There was no question about it. So, you are correct.
> Now, one thing you have to be very careful of in all trials is that the judge can't cross over the line, and seem to be telling the jury how to decide the case. A judge can't do that. The facts are up to the jury. . . . But anyway, we appreciate the time. And I think what you have done is to help us to take a very dangerous person off the street. So, you can feel good about that.

*Id.* at 79-80.

The judge sentenced Petitioner as a third habitual offender. Consequently, Petitioner received 427 months to 60 years for the armed robberies, 13 to 20 years for the home invasion, and two years for possessing a firearm in the commission of a felony, all to be served consecutively. R. 19-10, 9/29/04 Transcript, p. 6-7. He also received 40 to 60 months for the felon-in-possession of a firearm charge to be served concurrently with his armed robbery sentences. *Id.* at 7.

## B. Procedural History

The Michigan State Courts

Petitioner appealed his convictions to the Michigan Court of Appeals in a brief submitted by Petitioner's counsel, R. 19-11 at 48-70, and also in a separate *pro se* brief, R. 19-11 at 7-29. Petitioner argued:

> (1) he was denied a fair trial and the right to present a defense by the police department's destruction of the recovered wallet;
> (2) he was denied a fair trial and the right to present a defense by the prosecution's failure to disclose that fingerprints had not been identified at the scene;
> (3) insufficiency of the evidence regarding one of his three robbery convictions;
> (4) the denial of a fair trial due to (a) the judge's failure to deliver an adverse inference instruction regarding Horton, and (b) judicial bias
> (5) ineffective assistance of counsel based on counsel's failure to (a) request an adverse inference instruction regarding the wallet, (b) request an adverse inference instruction regarding the prosecution's failure to produce Horton, (c) subpoena key witnesses; (d) obtain proper trial clothing for Petitioner; and (e) object to improper prejudicial comments by the prosecution.

*See* Petitioner-Appellant Br. at 14-15; R. 19-11 at 50; *id.* at 8-9. Petitioner requested a new trial, resentencing, or in the alternative, an evidentiary hearing. *Id.* at 17, 20, 61, 64-65.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Bailey*, No. 258705, 2006 WL 954189 (Mich. Ct. App. Apr. 13, 2006). The Michigan Supreme Court denied Petitioner's application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by [the] Court." *People v. Bailey*, 476 Mich. 866, 720 N.W. 2d 308 (2006).

The District Court

Petitioner next filed for a writ of habeas corpus in the Eastern District of Michigan. He raised the following issues: (1) the denial of a fair trial and the right to present a defense by the loss of potentially exculpatory evidence, namely the recovered wallet; (2) the denial of a fair trial and the right to present a defense by the prosecution's failure to disclose exculpatory fingerprint evidence, (3) ineffective assistance of counsel, (4) deprivation of his Sixth Amendment confrontation rights when the prosecution failed to exercise due diligence in producing Kathleen Horton at trial, (5) the denial of a fair trial due to judicial bias, and (6) he was improperly sentenced as a third habitual offender under Michigan law. R. 7, Amended Petition for Writ of Habeas Corpus.

In response, the State noted that Petitioner's first claim regarding the wallet was unexhausted insofar as Petitioner argued, for the first time, that the trial judge erred by failing to give a *sua sponte* adverse inference instruction regarding the destroyed wallet. R. 12 at 10-12. Additionally, the State argued that Petitioner failed to exhaust his claim that the trial judge erred in sentencing Petitioner as a third habitual offender. *Id.* at 10-11. Finally, the State argued that the district court should reject Petitioner's remaining claims on the merits. *Id.* at 13-21.

The magistrate's R&R suggested denying Petitioner's habeas petition on the merits. *See* R. 21, Magistrate's R&R. Petitioner filed an objection to the R&R, R. 23, and filed affidavits from his girlfriend (Cynthia Hub) and his mother (Gloria Bailey). R. 24, Affidavit of Cynthia Hub and Gloria Bailey. The district court adopted the R&R and denied Petitioner the writ. R. 25, Order.

Petitioner sought a certificate of appealability on six claims: (1) the destruction of potentially useful evidence in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988); (2) the prosecution's

failure to disclose exculpatory evidence in violation of *Kyles v. Whitley*, 514 U.S. 419 (1995); (3)

trial counsel's ineffective assistance in violation of *Strickland v. Washington*, 466 U.S. 668 (1984);

(4) the prosecution's failure to produce a *res gestae* witness at trial; (5) judicial bias and improper

response to jury questions; and (6) improper sentencing under Michigan's third habitual offender

statute. The district court twice denied Petitioner a certificate of appealability. R. 31, First Order

Denying Certificate of Appealability; R. 35, Second Order Denying Certificate of Appealability.

This Court granted Petitioner a certificate of appealability on June 4, 2010.

On appeal, Petitioner contends the record supports habeas corpus relief on four grounds: (1)

ineffective assistance of counsel; (2) the destruction of the wallet in violation of his due process

rights; (3) the prosecution's failure to disclosure fingerprint evidence; and (4) judicial bias.

## II. ANALYSIS

Standard of Review

In a habeas case, this Court reviews a district court's legal conclusions de novo and its factual

findings for clear error. *Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006). Under the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may only grant a writ of

habeas corpus if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court renders an adjudication "contrary to" clearly established federal

law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Factual findings made by the state court, or by state appellate courts based upon the trial record, are presumed to be correct but may be rebutted by clear and convincing evidence." *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005); 28 U.S.C. § 2254(e)(1).

**1. Petitioner's Request for an Evidentiary Hearing**

Petitioner argues that he is entitled to an evidentiary hearing. Petitioner-Appellant Br. at 28. As Respondent notes, "Petitioner did not follow the State law procedure by moving for an evidentiary hearing in the trial court before his direct appeal or by seeking an order of remand from the Michigan Court of Appeals [for the purpose] of an evidentiary hearing on direct appeal." Def.-Appellee Br. at 30. Under AEDPA, federal courts are generally prohibited "from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing 28 U.S.C. § 2254(e)(2)). Because Petitioner failed to properly seek a remand in the Michigan Court of Appeals, he is not entitled to an evidentiary hearing in federal court unless he can meet the stringent dictates of § 2254(e)(2). Toward that end, Petitioner would only qualify for an evidentiary hearing if he demonstrates "a factual predicate that could not have been previously discovered through the exercise of due diligence," § 2254(e)(2)(A)(ii), and proves that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

factfinder would have found the applicant guilty of the underlying offense." § 2254(e)(2)(B).

Diligence for the purpose of § 2254(e)(2) depends upon "whether the prisoner made a reasonable

attempt, in light of the information available at the time, to investigate and pursue claims in state

court." *Williams*, 529 U.S. at 435.

Because Petitioner failed to satisfy the diligence requirements of § 2254(e)(2), he is not

entitled to an evidentiary hearing. Even if Petitioner had earned an evidentiary hearing, however,

it would ultimately fail to assist Petitioner because our "review under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*,

131 S. Ct. 1388, 1398 (2011).

## 2. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner asserts ineffective assistance of counsel on two grounds. First, he claims that "trial

counsel rendered ineffective assistance when he failed to call at least two available witnesses—

Cynthia Hub and Gloria Bailey—to corroborate [Petitioner's] trial testimony." Petitioner-Appellant

Br. at 28-29. Second, he argues that "defense counsel also failed to object to prosecutorial

misconduct and request 'adverse inference' instructions to which [Petitioner] was entitled under

Michigan law." *Id.*

*Strickland*'s two-pronged test provides the clearly established federal law for evaluating

ineffective assistance of counsel claims. 466 U.S. at 668. To establish ineffective assistance of

counsel, a petitioner must (1) demonstrate that his attorney's performance was deficient *and* (2)

show that he was prejudiced by his counsel's deficient performance. *Id.* at 687-88. Although

surmounting "*Strickland*'s high bar is never an easy task," establishing that "a state court's

application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (explaining that our review is "doubly" deferential when we review *Strickland* claims under AEDPA). Further, our review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S.Ct. at 1398.

The Michigan Court of Appeals rejected all of Petitioner's claims of ineffective assistance of counsel. Based on the record before it, the Michigan Court of Appeals properly denied Petitioner's ineffective assistance of counsel claims. As *Strickland* commands, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Because "[t]here are countless ways to provide effective assistance in any given case," *id*., *Strickland* places the burden on the Petitioner to prove otherwise, and the Michigan Court of Appeals reasonably concluded that Petitioner had not met his burden on any of his ineffective assistance claims.

First, the Michigan Court of Appeals reasonably applied *Strickland* in finding that the defense's decision not to call additional witnesses was not deficient. The court also noted that "[t]he record does not support defendant's claim that defense counsel failed to file or make appropriate motions." *People v. Bailey*, 2006 WL 954189 (Mich. App. Apr. 13, 2006), *4. Accordingly, the court found that Petitioner "has not overcome the presumption that defense counsel declined to call additional witness[es] as a matter of trial strategy." *Id.* Indeed, as the magistrate found in the R&R adopted by the district court, Petitioner failed to provide "any indication, much less evidence, with respect to the purported testimony of these witnesses" before the state court. R. 21 at 32. Although

Petitioner ultimately filed affidavits from his mother and his girlfriend with the district court, our review is limited to the record that was before the state court, *Pinholster*, 131 S.Ct. at 1398, and nothing on that record overcomes the presumption that defense counsel made a strategic choice in deciding not to call corroborating witnesses. Moreover, while Petitioner contends that the prosecutor's arguments regarding the absence of corroborating witnesses establishes this record, Petitioner-Appellant Br. at 36, an opponent's zealous advocacy does not amount to a *Strickland* violation. At best, Petitioner's argument establishes that counsel made a poor strategic decision, but *Strickland* does not indulge hindsight-based reasoning. *Strickland*, 466 U.S. at 680. Further, Petitioner's citations to cases where counsel was ineffective for failing to call corroborating witnesses are unpersuasive because, in those cases, the record overcame the presumption that defense counsel was acting strategically. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 375-78 (6th Cir. 2006) (finding prejudice prong satisfied where attorney intended to call alibi witnesses but failed to timely file notice, and trial judge subsequently refused to allow alibi testimony because of attorney's dilatory representation); *Clinkscale v. Carter*, 375 F.3d 430, (6th Cir. 2004) (same).

Second, the Michigan Court of Appeals properly applied *Strickland* with respect to Petitioner's claims that defense counsel was ineffective for failing to object to prosecutorial misconduct. On direct appeal, Petitioner argued that defense counsel should have objected to the prosecutor's comment on its failure to call corroborating witnesses. The Michigan Court of Appeals, citing *People v. Fields*, 450 Mich. 94, 112-115, 538 NW.2d 356 (1995), held that it was proper for the prosecutor to remark on the credibility of the defense's trial theory. *Bailey*, 2006 WL 954189 at *4. After finding no prosecutorial misconduct on the record, the court concluded that "defense

counsel was not ineffective for failing to object to the prosecutor's remarks." *Id.* Because neither logic nor precedent indicate that objecting without cause amounts to effective advocacy, the Michigan Court of Appeals properly determined that Petitioner failed to demonstrate a *Strickland* violation. *See Pinholster*, 131 S.Ct. at 1426 ("The benchmark for judging any claim of ineffectiveness under *Strickland* must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.") (citing *Strickland*, 466 U.S. at 686) (internal citations and alterations omitted). Although Petitioner cites to additional instances of alleged prosecutorial misconduct in his brief to this Court, Petitioner-Appellant Br. at 40-44, these claims were not presented in State court. As such, they are not properly exhausted and this court may not consider them. *See* 28 U.S.C. § 2254 (b); *Wagner v. Smith*, 581 F.3d 410, 414-415 (6th Cir. 2009).

Third, the Michigan Court of Appeals reasonably applied *Strickland* to Petitioner's claim that defense counsel was ineffective for failing to request adverse inference instructions based on police destruction of evidence and the absence of an endorsed *res gestae* witness. The Michigan Court of Appeals first determined that an adverse inference instruction was not appropriate for the wallet because Petitioner failed to demonstrate bad faith, thereby rendering an adverse inference instruction inapposite. *Bailey*, 2006 WL 954189 at \*1. This analysis correctly applied *Strickland* because, as discussed above, *Strickland* does not require counsel to make meritless requests. *Pinholster*, 131 S.Ct. at 1426. Next, the Michigan Court of Appeals articulated multiple reasons in support of defense counsel's failure to request an adverse inference instruction regarding Horton's failure to appear:

> First, considering that defendant was charged with an additional count of armed robbery involving Horton, and that defense counsel was successful in having that charge dismissed in its entirety when Horton could not be produced, it is not apparent that defense counsel was ineffective for failing to further pursue the issue of Horton's absence by requesting an adverse witness instruction. Second, without any basis in the record for concluding that there was a lack of due diligence in attempting to secure Horton's presence, defendant cannot demonstrate that an adverse witness instruction would have been warranted had it been requested. Counsel is not required to make futile requests or objections. Third, Horton's failure to testify was consistent with defendant's assertion that she was involved in the offense, although it did not establish that defendant was not himself involved. It is unlikely that had the jury been given the adverse inference instruction, it would have, on the basis of that instruction, rejected the complainants' testimony and believed defendant's.

*Bailey*, 2006 WL 954189 at *2. The court's rationale persuasively establishes that it is unlikely that Petitioner's trial counsel was ineffective. Even assuming trial counsel failed the first *Strickland* prong, however, the court convincingly concludes that Petitioner was not prejudiced because the outcome would not have been different. In sum, the Michigan Court of Appeals offered a textbook application of *Strickland*.

Accordingly, the Michigan Court of Appeals' denial of Petitioner's ineffective assistance of counsel claims was neither contrary to nor an unreasonable application of *Strickland*. The district court therefore appropriately denied habeas relief. R. 25, Order Accepting Report and Recommendation.

**3. Petitioner's Evidentiary Claims**

Petitioner raises two evidentiary claims. First, Petitioner argues that the police department's destruction of the wallet denied him due process in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988). Petitioner-Appellant Br. at 46. Second, Petitioner argues that the State failed to produce

critical evidence regarding the lack of Petitioner's fingerprints at the crime scene in violation of

*Brady v. Maryland*, 373 U.S. 83 (1963). Neither claim has merit.

In *Youngblood*, the Supreme Court articulated the test for analyzing the constitutionality of police destruction of "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57. This "potentially useful evidence" only violates due process when a defendant "show[s] bad faith on the part of the police." *Id.* at 58. "The presence or absence of bad faith by the [government] for purposes of the Due Process Clause must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n.*. Further, "where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied." *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001) (internal citations omitted).

In *Brady v. Maryland*, the Court articulated a three-prong test for determining whether the State violated the Due Process Clause by failing to disclose exculpatory evidence to the defense. 373 U.S. 83 (1963). To establish a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently, and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The petitioner bears the burden of establishing each of these three elements. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2001).

The Michigan Court of Appeals analyzed the facts pertaining to the wallet as follows:

> After he was arrested, defendant was transported to the police precinct in a patrol car. Later, police found one of the victim's wallet under the seat cushion. The wallet was placed in evidence but later destroyed. The record contains no evidence concerning the destruction of the wallet, only that the destruction occurred on March 18, 2004. There is nothing in the record to indicate that bad faith was involved, and defendant makes no such claim. Nor does defendant claim that he requested the wallet. Further, there is no indication that this evidence was exculpatory. Under these circumstances, the trial court did not abuse its discretion in denying defendant's motion to dismiss.

*Bailey*, 2006 WL 954189 at *1. In performing its analysis, the Michigan Court of Appeals cited to a Michigan case that quoted *Youngblood*. *Id.* Petitioner claims, however, that "[a]fter citing *Youngblood* . . . the Michigan Court of Appeals focused on 'whether the destruction was deliberate, whether the evidence had previously been requested, and whether the defendant could have put the evidence to significant use." Petitioner-Appellant Br. at 48. Petitioner argues that the Michigan Court of Appeals therefore "applied [an] enhanced standard" and "thus unreasonably applied the law and unreasonably determined the facts." *Id.*

The Michigan Court of Appeals reasonably applied *Youngblood* when it determined that the police department's destruction of the wallet did not deny Petitioner due process. Assuming without deciding that the Michigan Court of Appeals articulated a more stringent standard than *Youngblood* requires, Petitioner failed to demonstrate that the court unreasonably applied this standard to the facts of Petitioner's case. *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005); 28 U.S.C. § 2254(e)(1). Based on the court's factual finding that the government did not have knowledge of the exculpatory value of the evidence when the wallet was destroyed, it appropriately found no evidence of bad faith and, accordingly, no due process violation. As the R&R found, the court's analysis "tracks the standard established by the Supreme Court in *Youngblood*." R. 21 at 15. Further, because Petitioner

admits that the wallet was only "potentially useful," Petitioner-Appellant Br. at 49, he fails to rebut the court's finding at all. Although Petitioner's brief to this Court contained arguments that the police department violated its internal policies when the wallet was destroyed, Petitioner-Appellant Br. at 28-29, this argument was not presented to the state court and is therefore not properly before us. In any event, this assertion is not supported by the record.

The Michigan Court of Appeals evaluated Petitioner's *Brady* claim regarding fingerprint evidence as follows:

> In support of his claim that there was favorable fingerprint evidence collected at the crime scene, defendant points only to testimony establishing that evidence technicians were present at the crime scene, and that the prosecutor remarked in his opening statement that defendant personally robbed Patricia McGhee but then argued in summation that defendant gave orders to others instead. But neither of these matters suggest that the prosecution possessed fingerprint evidence that was favorable to defendant, i.e., fingerprints belonging to persons defendant alleged had committed the offenses. In fact, defendant points to no evidence establishing that the evidence technicians even recovered fingerprints. Thus, the record does not support defendant's *Brady* violation claim.

*Bailey*, 2006 WL 954189 at *4. Petitioner argues that these facts were adequate to establish a *Brady* violation. Petitioner-Appellant Br. at 52. In the alternative, Petitioner argues that "if the Court finds the record lacking, it should remand the case for an evidentiary hearing to answer the jury's question: were 'any fingerprints taken by the technicians?' An evidentiary hearing would determine whether the failure to disclose this evidence violated *Brady*." *Id.*

As the R&R points out, it is not entirely clear if Petitioner's argument is "based on disclosure at trial of the fact that evidence technicians were at the scene and the absence of any evidence that his prints were recovered, or on the supposition that the evidence technicians did recover prints that

belonged to other perpetrators." R. 21 at 17. To the extent Petitioner is claiming the former, he fails to establish that the Prosecution suppressed the information in violation of *Brady*. Although Petitioner argues that he did not learn that evidence technicians were at the scene until trial, Petitioner-Appellant Br. at 50, "*Brady* generally does not apply to a delayed disclosure of exculpatory information . . . ." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted). Further, given that Petitioner acknowledges that he was ultimately informed that evidence technicians were present at the crime scene, "no *Brady* violation occur[red] unless the defendant has been prejudiced by the delay in disclosure." *Id.* ("Delay violates *Brady* only where the delay causes prejudice."). As Defendant-Appellee argues, "defense counsel argued to the jury that fingerprints were taken at the scene yet there was no evidence that Petitioner's fingerprints were recovered. Thus, Petitioner was able to make use of the information disclosed by [the government] and [Petitioner] was not prejudiced by the delayed disclosure." Defendant-Appellee Br. at 53.

To the extent that Petitioner is speculating that fingerprints of other perpetrators may have been recovered, however, there is nothing in the record to support his assertion. Because Petitioner failed to develop the factual basis of this claim in State court proceedings, he is subject to 28 U.S.C. § 2254(e)(2)'s stringent statutory requirements. As discussed above, there is no evidence on the record that Petitioner diligently sought fingerprint evidence, § 2254(e)(2)(A)(ii), nor does Petitioner demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." §2254(e)(2)(B). Accordingly, Petitioner's request for an evidentiary hearing is denied.

**4. Petitioner's Allegations of Judicial Bias**

Petitioner claims that the trial judge exhibited bias "by instructing the jury to disregard its reasonable doubts" in denial of his constitutional right to due process. Petitioner-Appellant Br. at 52. This claim is unavailing.

Supreme Court precedent establishes that the Due Process Clause requires a fair trial in a fair tribunal. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). In *Liteky v. United States*, the Supreme Court held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." 510 U.S. 540, 555 (1994). To show constitutionally improper prejudice, a judge's comments must "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Allegations of judicial bias on the grounds of "poor decisionmaking" that does not infect the trial process do not warrant habeas relief. *Getsy v. Mitchell*, 495 F.3d 295, 312-13 (6th Cir. 2007) (en banc).

Petitioner claims that the trial judge "in essence" told the jury to disregard their reasonable doubts in response to jury questions. Petitioner-Appellant Br. at 52. Additionally, Petitioner complains that the Judge congratulated the jury on their work once they returned a verdict. *Id.* The Michigan Court of Appeals concluded that "[t]he trial court's comments to the jury were facially neutral; they do not reflect partiality and were not calculated to unduly influence the jury." *Bailey*, 2006 WL 954189 * 5. Additionally, the court noted that "[t]he additional remarks by the trial court of which defendant complains were made either outside the presence of the jury, or after the jury announced its verdict and, therefore, could not have influenced the jury's adverse verdict against defendant." *Id.*

The Michigan Court of Appeals reasonably applied Supreme Court precedent and found no judicial misconduct. Although the trial court judge expressed exasperation with the jury, the record indicates that he did so outside of the jury's presence. R. 19-8 at 163-164. Further, contrary to Petitioner's assertion the judge "in essence" urged the jury to ignore reasonable doubt, the judge explicitly disclaimed any view on the merits:

> Now, I have to explain to you very carefully, and pick my words very carefully, because I don't want to offend anyone. But do you remember when I told you when you went in there that you are not to be detectives, or defense attorneys, or prosecutors? You take the evidence that you heard in the courtroom. I can't tell you what the evidence is. You heard the evidence. The only questions in this case is, were those two people robbed, three people robbed? Was that house broken into, and did this man do it. That's all we're asking you to do. Forget about all of this, you heard the case. I don't decide the facts. You heard the facts. You decide the facts. If I were to sit here and tell you what the facts were, the Court would be deciding the evidence. And I can't do that. You do that. Okay? Thank you.

R. 19-9 at 75. The record establishes that the judge appropriately outlined the jury's responsibilities. As the R&R points out, the trial judge's response to the jury reasonably educated the jury regarding its role. R. 21 at 29-30. Under any reasonable reading of the record, the trial judge's comments here do not amount to a "display [of] deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555. With regard to the trial court's decision to congratulate the jury, the Michigan Court of Appeals correctly noted that this comment took place after the jury reached its verdict, *Bailey*, 2006 WL 954189 *5. Consequently, the Due Process clause is not implicated and Petitioner's claims of judicial bias fail.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court and deny the writ.