## BRACY *v.* GRAMLEY, WARDEN

No. 96–6133.   Argued April 14, 1997—Decided June 9, 1997

900

*Gilbert H. Levy*, by appointment of the Court, 519 U. S. 1106, argued the cause for petitioner. With him on the briefs was *Martin S. Carlson*.

*Barbara A. Preiner*, Solicitor General of Illinois, argued the cause for respondent. With her on the brief were *James E. Ryan*, Attorney General, and *Arleen C. Anderson* and *Steven J. Zick*, Assistant Attorneys General.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner William Bracy was tried, convicted, and sentenced to death before then-Judge Thomas J. Maloney for his

---

*\*Thomas F. Geraghty* filed a brief for Concerned Illinois Lawyers and Law Professors as *amicus curiae* urging reversal.

A brief of *amicus curiae* urging affirmance was filed for the State of California et al. by *Daniel E. Lungren*, Attorney General of California, *George Williamson*, Chief Assistant Attorney General, *Carol Wendelin Pollack*, Senior Assistant Attorney General, *Donald E. DeNicola*, Supervising Deputy Attorney General, and *David F. Glassman*, Deputy Attorney General, joined by the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *M. Jane Brady* of Delaware, *Dennis C. Vacco* of New York, *James S. Gilmore III* of Virginia, *Grant Woods* of Arizona, *Frankie Sue Del Papa* of Nevada, and *W. A. Drew Edmondson* of Oklahoma.

role in an execution-style triple murder.[1]  Maloney was later convicted of taking bribes from defendants in criminal cases. Although he was not bribed in this case, he "fixed" other murder cases during and around the time of petitioner's trial. Petitioner contends that Maloney therefore had an interest in a conviction here to deflect suspicion that he was taking bribes in other cases, and that this interest violated the fair-trial guarantee of the Fourteenth Amendment's Due Process Clause.  We hold that petitioner has made a sufficient factual showing to establish "good cause," as required by Habeas Corpus Rule 6(a), for discovery on his claim of actual judicial bias in his case.

Maloney was one of many dishonest judges exposed and convicted through "Operation Greylord," a labyrinthine federal investigation of judicial corruption in Chicago.  See *United States* v. *Maloney*, 71 F. 3d 645 (CA7 1995), cert. denied, 519 U. S. 927 (1996); see generally J. Tuohy & R. Warden, Greylord: Justice, Chicago Style (1989).  Maloney served as a judge from 1977 until he retired in 1990, and it appears he has the dubious distinction of being the only Illinois judge ever convicted of fixing a murder case.[2]  Before he was appointed to the bench, Maloney was a criminal defense attorney with close ties to organized crime who often

---

[1] *People* v. *Collins*, 106 Ill. 2d 237, 478 N. E. 2d 267 *(Collins I)* (affirming convictions and death sentences), cert. denied, 474 U. S. 935 (1985); *People* v. *Collins*, 153 Ill. 2d 130, 606 N. E. 2d 1137 (1992) *(Collins II)* (affirming denial of petition for postconviction relief), cert. denied, 508 U. S. 915 (1993).  Bracy is also under a death sentence for two murders in Arizona. *State* v. *Bracy*, 145 Ariz. 520, 703 P. 2d 464 (1985), cert. denied, 474 U. S. 1110 (1986); *Bracy* v. *Arizona*, 497 U. S. 1031 (1990) (denying petition for writ of certiorari to Arizona Supreme Court to review denial of Bracy's petition for review of state court's denial of petition for postconviction relief); *Bracy* v. *Arizona*, 514 U. S. 1130 (1995) (same).

[2] Although apparently the first in Illinois, Maloney is not, unfortunately, the first American judge to be convicted of taking bribes in murder cases. See, *e. g.*, *Ohio* v. *McGettrick*, 40 Ohio App. 3d 25, 531 N. E. 2d 755 (1988); *In re Brennan*, 65 N. Y. 2d 564, 483 N. E. 2d 484 (1985).

paid off judges in criminal cases. App. 54–66; 81 F. 3d 684, 696 (CA7 1996) (Rovner, J., dissenting) ("[B]y the time Maloney ascended to the bench in 1977, he was well groomed in the art of judicial corruption"). Once a judge, Maloney exploited many of the relationships and connections he had developed while bribing judges to solicit bribes for himself. For example, Lucius Robinson, a bailiff through whom Maloney had bribed judges while in practice, and Robert McGee, one of Maloney's former associates, both served as "bag men," or intermediaries, between Maloney and lawyers looking for a fix. Two such lawyers, Robert J. Cooley and William A. Swano, were key witnesses against Maloney at his trial. *Maloney, supra,* at 650–652.

Maloney was convicted in Federal District Court of conspiracy, racketeering, extortion, and obstructing justice in April 1993. Four months later, petitioner filed this habeas petition in the United States District Court for the Northern District of Illinois, claiming, among other things, that he was denied a fair trial because "in order to cover up the fact that [Maloney] accepted bribes from defendants in some cases, [he] was prosecution oriented in other cases." *United States ex rel. Collins* v. *Welborn,* 868 F. Supp. 950, 990 (ND Ill. 1994). Petitioner also sought discovery in support of this claim. Specifically, he requested (1) the sealed transcript of Maloney's trial; (2) reasonable access to the prosecution's materials in Maloney's case; (3) the opportunity to depose persons associated with Maloney; and (4) a chance to search Maloney's rulings for a pattern of pro-prosecution bias.[3] The District Court rejected petitioner's fair-trial claim and denied his supplemental motion for discovery, concluding that "[petitioner's] allegations contain insufficient

---

[3] The Government apparently conducted such research in the *Maloney* case. See Proffer of the Government's Evidence in Aggravation, App. 67 ("[A] review of computer printouts listing all of [one attorney's] felony cases before Judge Maloney reveals that [the attorney] obtained not guilty results in all six of the cases he had before Judge Maloney").

specificity or good cause to justify further discovery." *Id.*, at 991.

The Court of Appeals affirmed by a divided vote. The court conceded the "appearance of impropriety" in petitioner's case but reasoned that this appearance did not require a new trial because it "provide[d] only a weak basis for supposing the original trial an unreliable test of the issues presented for decision in it." 81 F. 3d, at 688–689. Next, the court agreed that petitioner's theory—that Maloney's corruption "permeate[d] his judicial conduct"—was "plausible," *id.*, at 689, but found it not "sufficiently compelling [an] empirical proposition" to justify presuming actual judicial bias in petitioner's case, *id.*, at 690. Finally, the court held that petitioner had not shown "good cause" for discovery to prove his claim, as required by 28 U. S. C. § 2254 Rule 6(a). 81 F. 3d, at 690. This was because, in the court's view, even if petitioner were to uncover evidence that Maloney sometimes came down hard on defendants who did not bribe him, "it would not show that he followed the practice *in this case.*" *Id.*, at 691 (emphasis added). In any event, the court added, because petitioner had failed to uncover any evidence of actual bias without discovery, "the probability is slight that a program of depositions aimed at crooks and their accomplices . . . will yield such evidence." *Ibid.*[4] We granted certiorari to address whether, on the basis of the showing made in this particular case, petitioner should have been granted discovery under Habeas Corpus Rule 6(a) to support his judicial-bias claim. 519 U. S. 1074 (1997). We now reverse.

---

[4] The dissenting judge insisted that petitioner had shown "good cause" for discovery to support his judicial-bias claim, 81 F. 3d, at 696–699 (opinion of Rovner, J.), and went on to state that, in her view, petitioner was entitled to relief whether or not he could prove that Maloney's corruption had any impact on his trial, *id.*, at 699–703. The latter conclusion, of course, would render irrelevant the discovery-related question presented in this case.

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. Thus, in *Harris* v. *Nelson,* 394 U. S. 286, 295 (1969), we concluded that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas proceedings. We held, however, that the All Writs Act, 28 U. S. C. § 1651, gave federal courts the power to "fashion appropriate modes of procedure," 394 U. S., at 299, including discovery, to dispose of habeas petitions "as law and justice require," *id.,* at 300. We then recommended that "the rule-making machinery . . . be invoked to formulate rules of practice with respect to federal habeas corpus . . . proceedings." *Id.,* at 300, n. 7. Accordingly, in 1976, we promulgated and Congress adopted the Rules Governing § 2254 Cases. Of particular relevance to this case is Rule 6(a), which provides:

> "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

Before addressing whether petitioner is entitled to discovery under this Rule to support his judicial-bias claim, we must first identify the "essential elements" of that claim. See *United States* v. *Armstrong,* 517 U. S. 456, 468 (1996). Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. *Aetna Life Ins. Co.* v. *Lavoie,* 475 U. S. 813, 828 (1986). Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. See, *e. g., id.,* at 820–821; *Tumey* v. *Ohio,* 273 U. S. 510, 523 (1927); 28 U. S. C. §§ 144, 455; ABA Code of Judicial Conduct, Canon 3C(1)(a) (1980). But the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal,"

*Withrow* v. *Larkin*, 421 U. S. 35, 46 (1975), before a judge with no actual bias against the defendant or interest in the outcome of his particular case.   See, *e. g., Aetna, supra,* at 821–822; *Tumey, supra,* at 523.

The facts of this case are, happily, not the stuff of typical judicial-disqualification disputes.   A judge who accepts bribes from a criminal defendant to fix that defendant's case is "biased" in the most basic sense of that word, but his bias is directed against the State, not the defendant.   Petitioner contends, however, that Maloney's taking of bribes from some criminal defendants not only rendered him biased against the *State* in those cases, but also induced a sort of compensatory bias against *defendants* who did *not* bribe Maloney.   Maloney was biased in this latter, compensatory sense, petitioner argues, to avoid being seen as uniformly and suspiciously "soft" on criminal defendants.   The Court of Appeals, in its opinion, pointed out that this theory is quite speculative; after all, it might be equally likely that a judge who was "on the take" in *some* criminal cases would be careful to at least appear to favor *all* criminal defendants, so as to avoid apparently wild and unexplainable swings in decisions and judicial philosophy.   81 F. 3d, at 689–690.[5]   In any event, difficulties of proof aside, there is no question that, if it could be proved, such compensatory, camouflaging bias on Maloney's part in petitioner's own case would violate the Due Process Clause of the Fourteenth Amendment.   We now turn to the question whether petitioner has shown "good

---

[5] At Maloney's trial, however, attorney William Swano provided testimony that lends some support to petitioner's compensatory-bias theory. See 81 F. 3d, at 697 (Rovner, J., dissenting).   According to Swano, Maloney retaliated against one of Swano's clients in one of the rare cases when Swano failed to offer Maloney a bribe and, in bribe negotiations in a later case, Maloney's bag man Robert McGee admitted as much.   Swano testified that he learned that in order " 'to practice in front of Judge Maloney . . . we had to pay.' "   *Ibid.*

cause" for appropriate discovery to prove his judicial-bias claim.

In the District Court, petitioner contended that he was "deprived of his right to a fair trial" because "[t]here is cause to believe that Judge Maloney's discretionary rulings in this case may have been influenced by a desire on his part to allay suspicion of his pattern of corruption and dishonesty." App. 5.[6]  In support, he submitted a copy of Maloney's 1991 indictment, App. 16–35, and a newspaper article describing testimony from Maloney's trial, in which attorney William Swano described an additional, uncharged incident where he bribed Maloney to fix a murder case.  App. 12, n. 1, 36–38. In a supplemental motion for discovery, petitioner's co-defendant Roger Collins alleged that "[a] Government witness in the Maloney case has advised . . . that co-defendant Bracy's trial attorney was a former partner of Thomas Maloney."  App. 51.  Collins attached to that motion a copy of the United States' proffer of evidence in aggravation in Maloney's case, which describes in considerable detail Maloney's corruption both before and after he became a judge.  See App. 54 ("Although [it is] difficult to imagine, Thomas Maloney's life of corruption was considerably more expansive than proved at trial").  The United States' proffer asserts, for example, that Maloney fixed serious felony cases regularly while a practicing criminal defense attorney;[7] that, as a judge, he continued to corrupt justice through the same

_____

[6] We express no opinion on the correctness of the various discretionary rulings cited by petitioner as examples of Maloney's bias.  See Brief for Petitioner 5–6.  We note, however, that many of these rulings have been twice upheld, and that petitioner's convictions and sentence have been twice affirmed, by the Illinois Supreme Court.  See n. 1, *supra*.

[7] The Government introduced evidence that Maloney regularly bribed Judge Maurice Pompey and Cook County Deputy Sheriff Lucius Robinson (who would later serve as Maloney's "bag man"); that on numerous occasions, using his organized-crime connections, Maloney fixed cases for his client Michael Bertucci; and that Maloney helped orchestrate the fix in the murder case of underworld hit man Harry Aleman.  App. 54–66.

political relationships and organized-crime connections he had exploited as a lawyer;[8] and that at least one attorney from Maloney's former law firm, Robert McGee, was actively involved in assisting Maloney's corruption, both before and after he became a judge, and also bribed Maloney himself, App. 55, 68–72. In addition, the proffer confirms that petitioner's murder trial was sandwiched tightly between other murder trials that Maloney fixed.[9]

As just noted above, petitioner's attorney at trial was a former associate of Maloney's, App. 51, and Maloney appointed him to defend this case in June 1981. The lawyer announced that he was ready for trial just a few weeks later. He did not request additional time to prepare penalty-phase evidence in this death penalty case even when the State an-

---

[8] For example, Lucius Robinson and Robert McGee, who were involved in Maloney's corruption as a lawyer, later facilitated his bribe taking when he became a judge. *United States* v. *Maloney*, 71 F. 3d 645, 650–652 (CA7 1995), cert. denied, 519 U. S. 927 (1996); App. 22–24; 54–55. As the Government alleged in its proffer: "Maloney was closely tied to the *[sic]* La Cosa Nostra prior to his appointment to the bench and ... major organized crime figures looked forward to [his] appointment as an opportunity to have a 'good friend' on the bench ... [and] after his elevation to the bench, Maloney continued his close First Ward/organized crime connections, fixing the results of several murder cases of import to organized crime." App. 54–55.

[9] Petitioner was tried in July 1981. William Swano testified at Maloney's trial that, in October 1980, he bribed Maloney in the murder case of Swano's client, Wilfredo Rosario. Maloney excluded Rosario's confession and, in May 1981, acquitted Rosario after a bench trial. *Maloney, supra,* at 650; App. 12, n. 1, 53, n. 1. Also in May 1981, Maloney took a bribe to throw the murder case of Lenny Chow, a hit man for a Chinatown crime organization. At a bench trial that August, Maloney admitted a dying declaration, but found it unreliable, and acquitted Chow. *Maloney, supra,* at 650; App. 20–22, 27. In 1982, Maloney and Swano fixed another murder case in which one Owen Jones was charged with beating a man to death with a lead pipe. Maloney took $4,000–$5,000 from Jones' mother, using his former associate Robert McGee as a "bag man," to acquit Jones on the felony-murder charge, and to convict him of voluntary manslaughter only. *Maloney, supra,* at 651; App. 20, 22, 28.

nounced at the outset that, if petitioner were convicted, it would introduce petitioner's then-pending Arizona murder charges as evidence in aggravation.  Tr. of Oral Arg. 43.[10] At oral argument before this Court, counsel for petitioner suggested, given that at least one of Maloney's former law associates—Robert McGee—was corrupt and involved in bribery, see *supra*, at 907, that petitioner's trial lawyer might have been appointed with the understanding that he would not object to, or interfere with, a prompt trial, so that petitioner's case could be tried before, and camouflage the bribe negotiations in, the *Chow* murder case.  Tr. of Oral Arg. 17–18, 43–44.[11]  This is, of course, only a theory at this point; it is not supported by any solid evidence of petitioner's trial lawyer's participation in any such plan.  It is true, however, that McGee was corrupt and that petitioner's trial coincided with bribe negotiations in the *Chow* case and closely followed the *Rosario* murder case, which was also fixed.  See n. 9, *supra*.

We conclude that petitioner has shown "good cause" for discovery under Rule 6(a).  In *Harris*, we stated that "where specific allegations before the court show reason to

---

[10] Petitioner's lawyer *did* request a continuance after petitioner was convicted, on July 29, 1981, and again on July 30.  Maloney denied these requests, however, and the sentencing hearing was conducted the next day. See *People* v. *Collins*, 106 Ill., at 280–281, 478 N. E. 2d, at 286; 81 F. 3d, at 694–695 ("Defense lawyers know . . . [that] if they wish to gather evidence of mitigating circumstances they must do so before the trial ends, because they will have no time to do so after the trial ends.  But in this case the defendants' lawyers dropped the ball"); *United States ex rel. Collins* v. *Welborn*, 868 F. Supp. 950, 986–987 (ND Ill. 1994) (noting that "no witnesses were presented by [petitioner or his codefendant]").

[11] Petitioner's counsel admitted that he "ha[d] not made this exact same argument on a previous occasion, but it is supported by the record."  Tr. of Oral Arg. 43.  Cf. Reply Brief for Petitioner 6 ("[I]t is impossible to say with confidence that Judge Maloney did not deliberately select a less experienced lawyer to represent Petitioner due to a corrupt motive, such as a desire to insure a guilty verdict and a death sentence in a high profile case").

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U. S., at 300. Habeas Corpus Rule 6 is meant to be "consistent" with *Harris.* Advisory Committee's Note on Habeas Corpus Rule 6, 28 U. S. C., p. 479. Ordinarily, we presume that public officials have "'properly discharged their official duties.'" *Armstrong,* 517 U. S., at 464 (quoting *United States* v. *Chemical Foundation, Inc.,* 272 U. S. 1, 14–15 (1926)). Were it possible to indulge this presumption here, we might well agree with the Court of Appeals that petitioner's submission and his compensatory-bias theory are too speculative to warrant discovery. But, unfortunately, the presumption has been soundly rebutted: Maloney was shown to be thoroughly steeped in corruption through his public trial and conviction. We emphasize, though, that petitioner supports his discovery request by pointing not only to Maloney's conviction for bribe taking in other cases, but also to additional evidence, discussed above, that lends support to his claim that Maloney was actually biased *in petitioner's own case.* That is, he presents "specific allegations" that his trial attorney, a former associate of Maloney's in a law practice that was familiar and comfortable with corruption, may have agreed to take this capital case to trial quickly so that petitioner's conviction would deflect any suspicion the rigged *Rosario* and *Chow* cases might attract. It may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish "good cause" for discovery. Although, given the facts of this particular case, it would be an abuse of discretion not to permit any discovery, Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*