Earl FOY, Jr., Petitioner,

v.

UNITED STATES of America,
Respondent.

No. C11–3052–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Oct. 15, 2012.

Jay Elliott Denne, Munger, Reinschmidt &
Denne, Sioux City, IA, for Petitioner.

Kevin C. Fletcher, U.S. Attorney's Office,
Sioux City, IA, for Respondent.

### ORDER

LEONARD T. STRAND, United States
Magistrate Judge.

"A man's got to know his limitations."[1]
So does a court. As such, even when the
parties are in general agreement as to what
the court *should* order, it sometimes turns
out that the court cannot do so. Petitioner's
motion (Doc. No. 23) for psychological evalu-
ation provides the court with an opportunity

---

1. Clint Eastwood, playing the role of Dirty Har-
ry, made this observation in *Magnum Force*, a
movie released in 1973.

to explore and contemplate its limited powers.

### BACKGROUND

Petitioner was convicted in 2009 of extortion and sending threatening communications via U.S. Mail and was sentenced to 480 months of imprisonment. After being committed to the custody of the United States Bureau of Prisons ("BOP"), he was assigned to the United States Penitentiary in Terra Haute, Indiana ("USP"), where he is currently incarcerated.

After an unsuccessful appeal, petitioner filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. On September 18, 2012, he filed his present motion for psychological evaluation. The motion states that Dr. Dan Rogers, a psychiatrist in Fort Dodge who conducted an evaluation of petitioner in 2000, believes a follow-up evaluation would be appropriate. A March 19, 2012, letter from Dr. Rogers explaining his reasons for recommending a new evaluation is attached to the motion. Doc. No. 23–1. The motion indicates that Dr. Rogers' estimated fee for the evaluation will be $3700 and asks the court to "temporarily relocate Plaintiff to a facility that is within a reasonable distance from Fort Dodge, Iowa so that Plaintiff can be evaluated by Dr. Dan Rogers." Doc. No. 23 at 2.

Respondent (the "Government") does not resist the proposed evaluation but reserves the right to seek a second evaluation, by the BOP, after Dr. Rogers issues his report. During a telephonic hearing on September 24, 2012, counsel for both parties agreed that the court could, and should, enter an order directing BOP to move petitioner to a BOP facility closer to Fort Dodge (such as the Federal Medical Center in Rochester, Minnesota) to allow Dr. Rogers to conduct the evaluation without having to travel to Terra Haute.

After the hearing, counsel for the Government advised the court and opposing counsel that the court may lack authority to order BOP to relocate petitioner for purposes of discovery in a Section 2255 action. The court reached the same conclusion through its own research. As such, the court conducted a second telephonic hearing on October 9, 2012. During that hearing, counsel for both parties agreed that the court cannot direct BOP to move petitioner closer to Fort Dodge. Counsel for petitioner advised the court that Dr. Rogers is willing to travel to Terra Haute to conduct the evaluation at the USP, but this would increase his estimated fee to $6,640. Counsel for the Government again expressed no objection to the proposed evaluation, with the proviso that the Government still may seek a second evaluation.

### ANALYSIS

**A. The Court's Authority to Order a Psychological Evaluation**

While the Government does not resist petitioner's request for a psychological evaluation, the court must determine whether it has to power to grant such a request in a Section 2255 case. Judge Bennett analyzed these issues in *Johnson v. United States*, No. 09–cv–3064 (Doc. No. 41, filed March 18, 2010) (hereafter "*Johnson*"). *Johnson* differs from the present case in that the Government sought a psychological evaluation of the petitioner over the petitioner's objections. Nonetheless, Judge Bennett's analysis is instructive. First, he held that the court does have authority to order an evaluation pursuant to Rule 6(a) of the Rules Governing Section 2255 Cases and Federal Rule of Civil Procedure 35:

> Federal courts entertaining habeas proceedings have recognized Rule 35 as the authority for mental health discovery, both in *habeas* cases by state prisoners subject to § 2254 Rule 6, which only authorizes discovery pursuant to the Federal Rules of Civil Procedure, *see, e.g., Pizzuto v. Hardison*, 2010 WL 672754, *1 (D.Idaho Feb. 20, 2010) (finding that Rule 35 of the Federal Rules of Civil Procedure applied, via § 2254 Rule 6(a), to the respondent's request for mental examinations in the federal *habeas* proceedings of a state prisoner); *Wagner v. Jess*, 2009 WL 4755281, *2 (E.D.Wis. Dec. 4, 2009) (finding that Rule 35 of the Federal Rules of Civil Procedure applied to the request of a *habeas* petition-

er for physical and mental examinations, via § 2254 Rule 6(a), but finding that the petitioner had not shown that his mental or physical condition was "in controversy"); *Holt v. Ayers,* 2006 WL 2506773 (E.D.Cal. Aug. 29, 2006) (denying the respondent's motion for mental examinations of a § 2254 petitioner pursuant to Rule 35 of the Federal Rules of Civil Procedure without prejudice to a renewal of the request addressing the requirements of Rule 35(a) in light of the order and deposition testimony of treating doctors), and in cases by federal prisoners subject to § 2255 Rule 6, which authorizes discovery pursuant to both the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure. *See, e.g., United States v. Kerr,* 2005 WL 1640343, *1 (E.D.Mich. July 8, 2005) (finding that the § 2255 petitioner properly sought his own mental examination by invoking Rule 35(a) of the Federal Rules of Civil Procedure, but finding such an examination was "unnecessary"); *United States v. Johnson,* 2003 WL 1193257, *11–*12 (N.D.Ill. March 12, 2003) (although neither party cited any legal basis for the § 2255 petitioner's request to conduct psychiatric or psychological testing, Rule 35(a) of the Federal Rules of Civil Procedure was applicable, and the petitioner's request did not comply with the requirements of that rule); *see also Smith v. United States,* 174 F.Supp. 828, 832–33 (S.D.Cal.1959) (in a case decided before § 2255 Rule 6 was adopted (in 1976), holding that it was clear that § 2255 proceedings were "civil" proceedings, and that there was no doubt that the court could require a mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure).

*Johnson* at 8–9.

■ After determining that the court has the power to order a mental examination in a Section 2255 case, Judge Bennett next analyzed the question of when it is appropriate to do so. He noted that under Rule 6 of the Rules Governing Section 2255 Cases, a petitioner "is not entitled to discovery as a matter of ordinary course." *Johnson* at 12 (citing *Newton v. Kemna,* 354 F.3d 776, 783 (8th Cir.2004) (quoting *Bracy v. Gramley,* 520

U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997))). The petitioner must demonstrate "good cause," which means a showing "that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to [*habeas*] relief." *Johnson* at 13 (citing *Rucker v. Norris,* 563 F.3d 766, 771 (8th Cir.2009) (*quoting Bracy,* 520 U.S. at 909, 117 S.Ct. 1793, with internal quotation omitted)).

Here, petitioner's Section 2255 motion alleges, *inter alia,* that his trial counsel was ineffective in several respects relating to petitioner's competency and alleged mental defect. Petitioner contends, for example, that he was not competent during the underlying proceedings and that his trial counsel should have investigated this issue. *See* Petitioner's Brief (Doc. No. 13) at 10–12. He also contends that his trial counsel should have investigated the issue of whether petitioner had a mental defect that would have (a) served as a defense to the *mens rea* of the crime charged or, at least, (b) served as grounds to suppress his incriminating statements. *Id.* at 15–19.

Dr. Rogers, in his March 19, 2012, letter, is critical of a forensic report prepared in August 2008 by Christina A. Pietz, Ph.D., at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri. Doc. No. 23–1 at 1–2. He suggests that petitioner suffers from mental retardation, not antisocial personality disorder, and that this alleged misdiagnosis impacted petitioner's ability to defend himself in the underlying proceedings. *Id.* He concludes as follows:

> If Mr. Foy is seriously retarded, which educational history and previous testing strongly indicates, then by definition he cannot be diagnosed as having an antisocial personality disorder. To fully assess the factors involved in his defense against criminal charges, additional testing concerning abilities to make decisions and judgments, use of memory, and other cognitive abilities would be needed.

*Id.* at 2.

Based on the issues petitioner raises in his Section 2255 motion and the information provided by Dr. Rogers, the court concludes that

petitioner has met his burden of showing that "good cause" exists for the proposed discovery. As such, the court does have the authority to order a psychological evaluation.

### B. The Court's Authority to Order BOP to Relocate Petitioner

As noted above, petitioner's motion asks the court to "temporarily relocate Plaintiff to a facility that is within a reasonable distance from Fort Dodge, Iowa so that Plaintiff can be evaluated by Dr. Dan Rogers." Doc. No. 23 at 2. On the surface, this appeared to be a reasonable, common sense request. And, indeed, the Government initially had no objection. On reflection, however, the parties agree that the issue is not so simple.

█ Once a defendant has been sentenced to a term of imprisonment, he or she is "committed to the custody of the Bureau of Prisons until the expiration of the term imposed." 18 U.S.C. § 3621(a). The BOP is then charged with designating "the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). Federal courts have long held that Section 3621(b) gives the executive branch, not the courts, primary authority with regard to a prisoner's place of confinement. *See, e.g., United States v. Jalili,* 925 F.2d 889, 892 (6th Cir.1991); *United States v. Dragna,* 746 F.2d 457, 458 (9th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *United States v. Leland,* 840 F.Supp.2d 401, 403 (D.Maine 2012). In short, once BOP assumes custody of a prisoner, the court has no authority to designate the place of imprisonment. *Leland,* 840 F.Supp.2d at 403.

Petitioner's counsel agreed during the second hearing that the court cannot direct BOP to move petitioner from the USP in Terra Haute to a different facility. At most, the court can (and does) find that a psychological evaluation should occur. It will be up to petitioner's counsel to make appropriate arrangements with BOP to allow Dr. Rogers to have access to petitioner.

### C. The Court's Authority to Approve Payment of Dr. Rogers' Fee

Petitioner requests advance authority for payment of Dr. Rogers' fee under the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"). The initial estimate was $3,700, but that contemplated petitioner being relocated to a reasonable distance from Fort Dodge, Iowa. If Dr. Rogers travels to Terra Haute, he anticipates that the fee will be $6,640.

The CJA provides a mechanism for furnishing representation to a financially-eligible person in certain situations, such as when a person is charged with a felony or Class A misdemeanor. 18 U.S.C. § 3006A(a)(1). "Representation" includes "counsel and investigative, expert, and other services necessary for adequate representation." 18 U.S.C. § 3006A(a). Representation under the CJA may be provided in a Section 2255 action if the court determines that the interests of justice so require. 18 U.S.C. § 3006A(a)(2)(B).

In this case, the court conducted an initial review of petitioner's Section 2255 motion and determined that summary dismissal was not appropriate. Doc. No. 2. The court later directed the appointment of counsel to represent petitioner, as permitted by 18 U.S.C. § 3006A(a)(2)(B). Doc. No. 8. As such, the CJA governs petitioner's request for payment of Dr. Rogers' anticipated fee.

While the CJA permits payment for "[s]ervices other than counsel," it imposes a cap on the amount of such payment:

> **Maximum amounts.**—Compensation to be paid to a person for services rendered by him to a person under this subsection, or to be paid to an organization for services rendered by an employee thereof, shall not exceed $2,400, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court, or by the United States magistrate judge if the services were rendered in connection with a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active or senior circuit judge.

18 U.S.C. § 3006A(e)(3). The Eighth Circuit has explained the procedure for approving amounts in excess of this cap as follows:

> Under the CJA, a defendant may submit an ex parte application for funding for expert services necessary for his defense, and the district court may authorize up to $1000 [now $2400] for such services. 18 U.S.C. § 3006A(e)(1) & (e)(3). If the defendant seeks funding in excess of that amount, however, he must show that the funds are "necessary to provide fair compensation for services of an unusual character or duration." 18 U.S.C. § 3006A(e)(3). If the district court certifies the request for excess funding, it is then submitted to the chief judge of the circuit for approval. *Id.* The chief judge's role under the CJA is similarly limited in both 18 U.S.C. § 3006A(d)(3) (attorneys' fees) and § 3006A(e)(3) (other services). He becomes involved only if the court presiding in the case has approved the request. The role of the chief judge therefore relates to the management of funds, and the decision to approve a recommendation for excess funds is entirely his responsibility, not that of an appellate panel. *See United States v. Johnson,* 549 F.Supp. 78, 80 (D.D.C.1982) (opinion by Chief Judge Spottswood W. Robinson, III, clarifying his limited authority under § 3006A(d)(3)).

*United States v. Johnson,* 391 F.3d 946, 948 (8th Cir.2004).

In short, obtaining approval for payment of Dr. Rogers' fee under the CJA is a multi-step process, and this court has only a limited role in that process. Due to the nature of petitioner's Section 2255 claims, Dr. Rogers' prior evaluation of petitioner and the court's inability to direct BOP to transport petitioner to a facility closer to Fort Dodge, Iowa, the court does find that the requested funds are "necessary to provide fair compensation for services of an unusual character or duration." For this reason, the court will execute an advance authorization certification if and when it is submitted by petitioner's counsel. However, petitioner is cautioned that this court's certification does not end the analysis. Petitioner's request for payment of expert fees in excess of $2400 must also be submitted to and approved by Chief Judge Riley pursuant to 18 U.S.C. § 3006A(e)(3).

### *CONCLUSION*

Based on the foregoing, petitioner's motion for psychological evaluation (Doc. No. 23) is hereby **granted in part** and **denied in part.** Specifically:

1. Petitioner's motion for leave to conduct discovery in the form of a psychological evaluation is **granted.**

2. Petitioner's motion for entry of an order compelling BOP to move petitioner to a facility closer to Fort Dodge, Iowa, is **denied.**

3. Petitioner's request for advance authorization of payment to Dr. Dan Rogers under the CJA in the amount of $6,640 is **denied without prejudice.** As set forth above, the court finds that the requested funds are necessary to provide fair compensation for services of an unusual character or duration. As such, petitioner's counsel may submit an advance authorization request to the court for review and execution. However, the authorization will not be effective unless and until it is approved by the Chief Judge of the United States Court of Appeals for the Eighth Circuit.

**IT IS SO ORDERED.**