[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10390

_____

D.C. Docket Nos. 1:12-cv-03448-RLH-AJB,
1:05-cr-00479-RLH-AJB-1

HARRISON NORRIS, JR.,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 25, 2016)

Before WILLIAM PRYOR, ANDERSON, and PARKER,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

---

[*] Honorable Barrington D. Parker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

This appeal requires us to decide whether the district court erred by denying an evidentiary hearing for Harrison Norris's motion to vacate, 28 U.S.C. § 2255, which alleged that his conviction violated the Due Process Clause because his trial judge was biased against him and mentally incompetent. Norris, a black man, was convicted of forcing women, many of whom were white, into prostitution. Judge Jack Camp presided over Norris's trial and sentenced him to life in prison. We vacated that sentence as an impermissible general sentence. On remand, a different judge sentenced Norris to 35 years of imprisonment. Three years after Norris's trial, Judge Camp was arrested for illegal possession of drugs and a firearm. The United States disclosed that Camp had bipolar disorder and had suffered a brain injury from a bicycling accident. The investigation also disclosed allegations of racial bias. One witness alleged that Camp wanted to give all black men who pimped white women the maximum penalty and that Camp specifically disliked Norris. Because Norris sufficiently alleged that Judge Camp was actually biased against him, we reverse and remand for an evidentiary hearing.

## I. BACKGROUND

Harrison Norris Jr. was indicted on 28 counts based on his forced prostitution of several women. Norris proceeded *pro se*, and a jury convicted him of 24 counts. Norris's offense level was 48, which carried a recommended sentence of life imprisonment for any criminal-history category. Judge Camp

2

sentenced Norris to a general sentence of life. On appeal, we affirmed the convictions but vacated the sentence because it was a general sentence and some of the convictions carried maximum penalties. *See United States v. Norris*, 358 F. App'x 60 (11th Cir. 2009). The resentencing was assigned to Judge Forrester after Judge Camp was arrested. Judge Forrester sentenced Norris to 35 years of imprisonment, and we affirmed that sentence on appeal. *See United States v. Norris*, 453 F. App'x 861 (11th Cir. 2011).

Three years after Norris's trial, Camp pleaded guilty to possessing controlled substances, 21 U.S.C. § 844(a), aiding and abetting the unlawful possession of controlled substances, *id.*; 18 U.S.C. § 2, and conversion of government property, 18 U.S.C. § 641. He filed a sentencing memorandum that detailed his history with bipolar disorder and an injury to his left temporal lobe from a bicycling accident in 2000.

The United States investigated Camp's misconduct and disclosed its findings in a letter from Sally Quillian Yates, then the United States Attorney for the Northern District of Georgia, to the Federal Defender Program. The Yates letter concluded that Camp used illegal drugs beginning in May of 2010. Camp denied ever using drugs while conducting court business, and the government found no evidence to the contrary. The Yates letter also recounted statements of witnesses alleging that Camp harbored racial bias. The letter described the statements of one

3

witness, S.R., who stated that "Camp told her that when African-American men appeared before him, he had a difficult time adjudicating their cases and specifically determining their sentences because he could not differentiate them from" S.R.'s black boyfriend, who Camp thought was taking advantage of her. S.R. also said that a particular offender, allegedly Norris, reminded Camp of S.R.'s boyfriend. Another witness heard Camp use a racial epithet to refer to S.R.'s boyfriend, but a different witness who overheard the conversation did not. The letter stated that Camp denied making any of these statements and denied "ever taking any judicial action based on racial bias."

The United States also disclosed a recorded phone call between S.R. and Camp in which they discussed a specific defendant, believed to be Norris. S.R. asked Camp if he still believed that "guys like that you couldn't help but want to give 'em life." Camp responded, "Well, maybe I should. I'm much more sensitive to that after talking with you." S.R. said, "I was just trying to talk you down out of the whole, you know, the racism thing, because at one point in time, you were like, I just can't help, I want to give 'em all life, and I was like, oh God, I hope he's not doing that. And I guess I tried to talk you, you know, a little bit out of that, because I know not everybody's the same, but I felt like I had you feeling like that at one point in time." Camp responded, "Yeah, I do think you had done like that." On the call, S.R. asked Camp specifically about Norris, and asked, "What is your personal

4

opinion when you see a black guy like that, I'm sure they were white girls, what do you think?" Camp responded, "Oh, yeah, mostly were white girls. I think almost all of them were white girls." She further asked Camp whether black men pimping white women "just burns you up, you know, and you just couldn't help but to want to give them [life]." Camp responded, "It does burn me up, but isn't locking him up until, maybe, he's 68 enough?" Camp concluded by explaining that "there are always two sides" to these cases.

Norris filed a motion to vacate, 28 U.S.C. § 2255, on the grounds that Camp's racial bias and mental incompetence violated his rights under the Due Process Clause of the Fifth Amendment. Norris requested an evidentiary hearing. The district court explained that it could not foreclose the probability of bias, but it determined that "bias of the kind alleged here is trial error, not a structural defect." The district court reviewed the trial transcript and determined that Judge Camp was fair when dealing with Norris. The district court denied relief without an evidentiary hearing, but granted a certificate of appealability on the issue "whether relief under 28 U.S.C. § 2255 was properly denied without an evidentiary hearing on the claim that the defendant was denied due process because the trial judge was biased or was impaired by his neurological condition and mental health."

5

## II. STANDARD OF REVIEW

"We review the denial of an evidentiary hearing for abuse of discretion. 'A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'" *Diveroli v. United States*, 803 F.3d 1258, 1262 (11th Cir. 2015) (citation omitted) (quoting *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014)). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court must grant an evidentiary hearing. 28 U.S.C. § 2255(b).

## III. DISCUSSION

Norris argues that his trial violated his right to due process because Judge Camp was biased against him and mentally incompetent. We conclude that the district court erred by denying Norris's claim that Camp was biased against him without an evidentiary hearing. But the district court correctly denied Norris's claim that Camp was incompetent.

### A.  Bias

Norris alleges that Judge Camp was biased against him in violation of the Due Process Clause of the Fifth Amendment. "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the

6

defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)); *accord In re Murchison*, 349 U.S. 133, 136 (1955) ("Fairness of course requires an absence of actual bias in the trial of cases."). Even in the absence of actual bias, a judge's interest or prejudice may "pose[] such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009) (quoting *Withrow*, 421 U.S. at 47). But "[t]he Due Process Clause demarks only the outer boundaries of judicial disqualifications." *Id.* at 889 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986)). The federal recusal statute, by contrast, sets a higher bar. It requires a judge to disqualify himself "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). Norris raises only a constitutional argument, so we do not address the recusal statute.

Norris sufficiently alleged that Camp was actually biased against him. Norris proffered evidence that Camp "had a difficult time adjudicating [African-American men's] cases" and specifically disliked Norris based on the fact that Norris was a black man who pimped white women. Norris alleged that Camp wanted to give all black offenders who pimped white women the maximum possible penalty, and Camp gave Norris the maximum penalty. Norris's allegations imply that Camp's

7

bias against Norris might have compromised his impartiality. On this record, we cannot conclusively say whether Camp was actually biased, and Camp denies that he was, but the record does not "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Contrary to the ruling of the district court, structural error occurs when a judge with actual bias against a defendant presides at his trial. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991); *see also Tumey v. Ohio*, 273 U.S. 510, 535 (1927) ("No matter what the evidence was against [the defendant], he had the right to have an impartial judge."). The government concedes that denial of an impartial judge is structural error that demands reversal. "The entire conduct of the trial from beginning to end is obviously affected . . . by the presence on the bench of a judge who is not impartial." *Fulminante*, 499 U.S. at 309–10; *accord United States v. Mills*, 138 F.3d 928, 938 (11th Cir. 1998) ("[T]here are errors that infect the *whole* proceeding, such as a biased judge or an absence of counsel."). And we cannot review a trial transcript to determine whether the presiding judge, despite his actual bias, was fair: "The record does not reflect the tone of voice of the judge, his facial expressions, or his unspoken attitudes and mannerisms, all of which, as well as his statements and rulings of record, might have adversely influenced the jury and affected its verdict." *United States v. Brown*, 539 F.2d 467, 469 (5th Cir. 1976).

8

We acknowledge that the Due Process Clause incorporates the rule at common law that mandated recusal only when the judge had "a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Tumey*, 273 U.S. at 523; *see also* John P. Frank, *Disqualification of Judges*, 56 Yale L.J. 605, 609–12 (1947) (collecting historical sources). "[M]atters of kinship, personal bias, state policy, [and] remoteness of interest would seem generally to be matters merely of legislative discretion," *Tumey*, 273 U.S. at 523, and "[p]ersonal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under the Due Process Clause,'" *Caperton*, 556 U.S. at 877 (quoting *Lavoie*, 475 U.S. at 820). But Norris alleges something more than the personal biases or prejudices that are governed by the recusal statute; he identifies specific statements that imply that Camp could not set aside his prejudice against him.

On remand, the district court must allow Norris an evidentiary hearing to prove that Camp was actually biased against him. The district court must determine whether there is an intolerable probability that Camp could not "hold the balance nice, clear and true." *Id*. at 879 (quoting *Lavoie*, 475 U.S. at 825). We express no opinion about whether Norris will be able to prove that Camp was actually biased against him.

9

### *B. Incompetence*

Norris also argues that Judge Camp was mentally incompetent in violation of Norris's right to due process. The Due Process Clause requires that the trial judge is "mentally competent to afford a hearing." *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912). Norris proffered evidence in the form of a statement that Camp made before his sentencing that he suffered from bipolar and mood disorders since 1999 and suffered frontal lobe damage from a bicycle crash in 2000 resulting in mood issues and problems in impulse control. Norris alleges that this medical history is why Camp gave him an "illegal general sentence . . . despite his decades of judicial experience."

The district court correctly denied this claim without an evidentiary hearing. A district court need not hold an evidentiary hearing if the allegations are based on unsupported generalizations. *Diveroli*, 803 F.3d at 1263. Nothing in the transcript suggests that Camp was incompetent, and many competent judges make minor errors such as imposing an improper general sentence. The mere fact that Camp suffered from mental illness is insufficient to warrant an evidentiary hearing.

### IV. CONCLUSION

We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for an evidentiary hearing on the claim that Norris was denied due process because Judge Camp was actually biased against him.

10